**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JEFFRIES BANKNOTE COMPANY, Respondent.**

**No. 16700.**

United States Court of Appeals
Ninth Circuit.

Sept. 6, 1960.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Duane B. Beeson, Richard J. Scupi,

Attys., N. L. R. B., Washington, D. C., J. H. Doesburg, Jr., J. N. Goddess, Chicago, Ill., for respondent.

Before ORR and HAMLIN, Circuit Judges, and EAST, District Judge.

HAMLIN, Circuit Judge.

Before the Court is a petition of the National Labor Relations Board for the enforcement of an order of the Board dated September 15, 1959, made after a finding by the Board that Jeffries Banknote Company, respondent herein, had violated § 8(a) (5) and (1) of the National Labor Relations Act, as amended (29 U.S.C.A. § 151 et seq.), by refusing to execute a collective bargaining agreement which had been negotiated on its behalf by the employers' association through which it participated in a multi-employer bargaining relationship with the respresentative of its employees.

The record shows the following factual situation to have existed. For a number of years prior to 1958 collective bargaining between lithographic employees and most of the commercial printing companies in Los Angeles had been conducted upon a multi-employer basis, the employees being represented by the Amalgamated Lithographers of America, Local 22, AFL-CIO, hereinafter Union, and the printing companies being represented by the Union Employers' Section of the Printing Industries Association, hereinafter the Association. The members of the Association had signed an authorization form which authorized the Association, through a negotiating committee, to represent all of its members in collective bargaining.[1]

The Association's contract with the Union was due to expire in February, 1958. Respondent, who was not affiliated with the Association, had a contract with the Union which expired at the same time. During the winter of 1957–58, the Association (on behalf of the 46 companies it represented) and the respondent carried on concurrent but separate negotiations with the Union. None of the negotiations resulted in a contract prior to the termination of the existing contract. On March 14, 1958, respondent abandoned separate negotiations with the Union and designated the Association as its collective bargaining representative. A written notice signed by respondent was received by the Union which read as follows:

"Jeffries Banknote Company has designated the Union Employers Section of Printing Industries Association of Los Angeles as its collective bargaining representative and will henceforth be represented in any negotiations by them."

Thereafter, all individual negotiations between respondent and the Union ceased.

■ On March 20, 1958, no agreement having been reached, the Union called a strike against all the Association members, including respondent. While this strike was in progress, the Union negotiated with some members of the Association independently from the Association and apparently reached an agree-

---

1. In relevant part the authorization form reads as follows:

"The undersigned .............. authorizes the [Association] to act as its collective bargaining agent in negotiating with the [Union] a tentative agreement covering wages, hours and other conditions of employment.

"If the Association reaches such tentative agreement, it shall be referred to a meeting of those companies signing this authorization, and in the event a majority of said companies attending this meeting ratify its terms, the Association shall then execute a formal contract with the

Union binding upon each Company signing this authorization.

"It is further agreed by the undersigned .............. that it will refrain from entering into any individual negotiation, contract, or understanding with the Union, and that it will comport itself in a manner consistent with preserving Association unity.

&ast; &ast; &ast; &ast; &ast;

"This authorization may be revoked after the execution of a contract between the Association and the Union by submission of written notice to [Association]. * * *"

ment with two of its most substantial members. When this information was obtained by the officers of the Association, an emergency meeting of the Association's negotiating committee was called. It was there stated that two of the employers had made separate agreements with the Union and that the terms of the agreement so signed represented the only basis upon which the strike could be settled. Upon the following morning a meeting of employers represented by the Association was held. Respondent was present at this meeting. The situation was generally discussed. Prior to reaching any conclusion in the matter, the Association's secretary stated that in view of the action taken by the Union in negotiating agreements with individual members of the Association, any company who had signed an authorization for the Association to represent it could withdraw its authorization. Two of the companies at that time signed forms revoking the Association's authority to represent them. Respondent, however, did not sign such a form.

Thereafter, at the meeting, it was agreed that the Association would enter into a contract with the Union similar to that which had been entered into by two individual members of the Association and the Union, and that such a contract should be presented to the Union for approval. Included in the contract, which was approved by a majority of the members of the Association, was a profit sharing clause. The Trial Examiner found that after the meeting of employers represented by the Association had concluded on this morning, respondent's "representative at the meeting indicated that Jeffries would 'go along' with a contract negotiated by the [Association's negotiating committee], provided it did not contain a profit-sharing clause, but that if such a clause was included in the contract Jeffries would not sign it."

Thereafter, on the same day, the Association's negotiating committee met with the Union. Mr. Brandt, the Union representative, was advised that respondent had stated that if the contract included the profit sharing clause that respondent would not go along. There is some dispute in the testimony as to Brandt's reply, but the Trial Examiner resolved this by finding: "Upon the entire testimony I am convinced and find that Brandt made no statement at this meeting reasonably construed as acquiescence in Jeffries revocation of [the Association's] authority." At the meeting on March 27, a contract was agreed upon between the Association and the Union which included the profit sharing clause. The Master Agreement reached on March 27 was later executed by the negotiating committee of the Association and the Union. The Union submitted identical copies of the Master Agreement thus executed to all employers who had designated the Association as their bargaining representative, for signature. Jeffries did not sign this agreement. There were later conversations between Brandt, the Union representative, and respondent concerning the return to work of the employees. In these conversations, respondent contended that there was no contract between respondent and the Union, and the Union contended that respondent was bound by the contract negotiated by the Association. They each then agreed to consult their respective attorneys. Respondent not having signed any agreement, this proceeding was commenced by the filing of a complaint alleging that respondent had violated the National Labor Relations Act, § 8(a) (5) and (1).

The Board found the respondent had not unequivocally withdrawn from the Association before an agreement was reached with the union on a new contract, and found that respondent had violated § 8(a) (5) of the Act by refusing to sign the Agreement negotiated by the Association. There is substantial evi-

dence upon the whole record to support this finding.[2]

The record shows that the Union had been notified in writing by respondent that the Association was its bargaining representative. Respondent had an opportunity at the March 27th meeting to withdraw this authorization in writing, but neglected to do so. Its statement made after the meeting was over, or as it was breaking up, that it would not go along with a profit sharing clause, was not sufficient to revoke its formal authorization. Two other employers at this meeting did in writing withdraw their authorization.

■ There is evidence in the record supporting the Trial Examiner's finding that Brandt, the Union representative, did not acquiesce when told of respondent's position at the contract meeting.

■ The Board has repeatedly held that the intention by a party to withdraw must be unequivocal and exercised at an appropriate time. Retail Associates, Inc., 120 N.L.R.B. 388, 392–393; McAnary and Welter, 115 N.L.R.B. 1029; Jahn-Tyler Printing & Publishing, 112 N.L.R.B. 167.

■ As a part of good faith bargaining by both employer and a representative of employees, the Act requires each party to execute in writing any agreement reached by the parties. Section 8(d) of the Act defines collective bargaining as follows:

"For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, *and the execution of a written contract incorporating any agreement reached if requested*

*by either party,* * * *." [Emphasis added.]

This Court has held that a party has an obligation to sign an agreement that has been reached between the parties. N. L. R. B. v. Nesen, 9 Cir., 1954, 211 F.2d 559.

We hold that there is substantial evidence in the record to support the order of the Board.

Let the order of the Board be enforced.

2. The Board did not reach, nor do we, the question of what the situation would have been if respondent had unequivocally withdrawn its authorization to the Association.