**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SHERIDAN CREATIONS, INC., Respondents.**

**No. 10, Docket 29496.**

United States Court of Appeals Second Circuit.

Argued Oct. 25, 1965.

Decided March 16, 1966.

Lumbard, Chief Judge, dissented.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and LEVET, District Judge.*

Glen M. Bendixsen, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel,

* Sitting by designation.

and Anthony J. Obadal, Atty., N. L. R. B., on the brief), for petitioner.

Ralph P. Katz, New York City (Delson & Gordon, New York City, on the brief), for respondent.

### J. JOSEPH SMITH, Circuit Judge:

Respondent Sheridan Creations is engaged in the wholesale distribution of ladies' sweaters and related products in New York, New York. After decision by the trial examiner in favor of respondent, the NLRB found that respondent violated § 8(a)(1) and (5) of the NLRA, 29 U.S.C. 158(a), by refusing to accept and ratify a collective bargaining agreement reached between a union and the Knitwear Employers Association, the multi-employer association to which respondent had belonged. The Board issued a cease and desist order on October 1, 1964, and petitions pursuant to § 10(e) of the Act, 29 U.S.C. 160(e), for enforcement of the order. We hold the order a valid exercise of the Board's power and order its enforcement.

Pursuant to agreement with the union, respondent had joined the association in 1960, after the union had organized respondent's employees. Respondent adopted the existing joint agreement between the union and association, and was a party to agreements of 1960 and 1961. The 1961 agreement was to terminate April 30, 1963, and the union notified respondent and the association, on February 23, 1963, of a wish to negotiate. It was the usual practice for the association to bargain generally and for each member to bargain on particular matters. Respondent did not reply to the union's request, and the union and association met March 14 and 25. Respondent's Secretary-Treasurer, its bargaining official, was present at these meetings. On March 27 respondent filed a petition with the NLRB Regional Director, requesting an election in a single employer unit, and on April 1 notified the association it was withdrawing bargaining authority effective March 26. Respondent withdrew the petition of March 27, as well as another filed later, and eventually filed a third petition on May 1. After further negotiation the union and association agreed to terms on April 30, and the agreement was ratified and signed by May 8. Respondent refused to ratify and to continue to recognize the union.

Respondent argued before the Board that there was nothing to support the determination of a multi-employer bargaining unit. The Board has been given broad discretion in this area, NLRB v. Truck Drivers Local No. 449, etc. (Buffalo Linen), 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957), especially where the individual units are small. Here the units were small and worked in the same narrow field and the employers had agreed to bargain and had bargained as such a unit. Respondent stressed the right of individual employers to bargain separately on special matters. Sometimes this has resulted in a finding of no multi-employer unit, see Retail Clerks Union No. 1550 v. NLRB, 117 U.S.App.D.C. 191, 330 F.2d 210 (1964). But "Multi-employer bargaining does not altogether preclude demand for specialized treatment of special problems." Genesco, Inc. v. Joint Council 13, United Shoe Workers of America, 341 F.2d 482 (2 Cir. 1965). The Board's determination of the appropriate bargaining unit should not lightly be set aside, Packard Motor Car Co. v. NLRB, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). Respondent here indicated by agreeing to three previous agreements that it intended to be bound by the Association's bargaining. We think there was sufficient support for the determination of a multi-employer unit.

The Board's rule, The Kroger Co., 148 NLRB 569 (1964), Ice Cream Frozen Custard Employees, 145 NLRB 865 (1964), C & M Construction Co., 147 NLRB 843 (1964), Walker Electric Co., 142 NLRB 1214 (1963), that withdrawal from a multi-employer unit is untimely, absent union consent, once negotiations on a new contract have started, seems to us logical, although it has not yet received approval from the courts. To permit withdrawal aft-

er negotiations commence might well lead to a breakdown of the unit. Withdrawal should be restricted to the period before negotiations to assure that it is not used as a bargaining lever. Since this is the purpose of the rule, it is used as an alternative to an inquiry into good faith. In fact, the Board, in reversing the Trial Examiner, held that no issue of good faith was involved. In any event, good faith in a refusal to bargain is no defense to the unfair labor practice charge, United Aircraft Corp. v. NLRB, 333 F.2d 819 (2 Cir. 1964); Welch Scientific Co. v. NLRB, 340 F.2d 199 (2 Cir. 1965), at least where the Board finds, as it did here, that the multi-employer unit was in fact the appropriate one.

 Multi-employer bargaining is based on the consent of the parties to treat with one another through the agreed units. A shift in membership after negotiations have begun has lively possibilities for disrupting the bargaining process. In a case such as this, good faith withdrawal of a small unit might in practice have minimal or no effect. However, the potential for disruption is sufficient to justify the Board in adopting a uniform rule for all cases that withdrawal is not timely once bargaining has begun. We cannot say that no such potential exists, or that its incidence would be so infrequent that the Board's judgment that the uniform rule is needed is without a reasonable foundation or arbitrary in nature.

 Respondent claimed that since it filed a petition for an election in a single employer unit on May 1, and the agreement between the union and the association was not signed until May 8, the petition was timely. In view of the statutory duty to execute contracts where agreement has been reached (here, on April 30), Sec. 8(d), filing an election petition when under that duty cannot alter it.

 When withdrawal is not timely the multi-employer unit is still the unit held "appropriate," Sec. 9(a), for the purpose of collective bargaining.

 Respondent argues that it would be illegal for it to bargain after it knew that a majority of *its* employees had withdrawn. "*Its*," however, refers to the bargaining unit, once one has been established, rather than one employer of a multi-employer unit.

An appropriate order will enter enforcing the order of the Board.

LUMBARD, Chief Judge (dissenting):

The sole issue before us is the appropriateness of the Board's rigid rule that withdrawal from a multi-employer bargaining unit, once negotiations have begun, is untimely and ineffective regardless of bad faith or a showing that there has been an adverse effect upon the bargaining process. In my opinion, withdrawal should be permitted at any time in the absence of evidence that it was in bad faith or that it was unfair to any of the other participants in the negotiations.

By their nature multi-employer bargaining units are voluntary and consensual. NLRB v. Sklar, 316 F.2d 145 (6 Cir. 1963). Only recently the Board declared: "It is because the multiemployer unit is rooted in consent that the Board has always permitted an employer to withdraw from such a unit for any reason at a proper time and by giving proper notice. The Board has considered material to permitting withdrawal only the 'time and manner' of the withdrawal request * * * Important practical considerations demonstrate the wisdom of leaving intact the freedom of the parties to form and dissolve, to modify and adapt, multiemployer units." The Evening News Association, 154 NLRB No. 121, pp. 4, 8 (1965).

I agree with the Board's view that it must be alert to prevent an employer from gaining the advantages of group bargaining without accepting the burden of being bound by whatever decision the group arrives at, and to protect a party which bargains in reliance upon the composition of the unit. To that end it is well settled that the intention of a party to

withdraw from a multi-employer bargaining unit must be unequivocal and exercised at an appropriate time. E. g., NLRB v. Jeffries Banknote Co., 281 F.2d 893 (9 Cir. 1960); The Kroger Co., 148 NLRB No. 69 (1964); Walker Electric Co., 142 NLRB 1214 (1963).

But is does not follow and certainly it is not "well-settled," as the Board stated in its opinion in this case, that withdrawal after negotiations have begun is per se untimely. The only case relied upon by the Board, Kroger Co., supra, did not state such a flat rule; cited no authority for such a rule; and was decided on the basis of a very careful factual discussion. Nor was Walker Electric Co., decided solely on the basis of an untimely withdrawal. "But even more important than the timing aspect," the opinion noted, "is the secrecy and want of good faith." 142 NLRB 1214, 1221 (1963). The only prior cases which purported to follow the rule adopted in this case were Retail Associates, Inc., 120 NLRB 388 (1958) and C & M Construction Co., 147 NLRB 843 (1964). But in both cases the rule was dictum—in Retail Associates the Board found the withdrawal was in bad faith after an extensive factual analysis and in C & M Construction Co. the union consented to it.

In my view, we should adhere to the procedure originally established by the Board of inquiring whether the withdrawal was in good faith,[1] and not harmful to the other parties. This is the investigation which it has been able to make in the past and the appropriateness of which it recently reaffirmed: "A careful analysis of precedent reveals that variations in facts and circumstances preclude a *per se* approach, and demonstrates that

the ultimate determination with respect to timely withdrawal must turn upon a discriminating evaluation of all attendant facts and circumstances." Tulsa Sheet Metal Works, Inc., 149 NLRB No. 120, p. 16 (1964).[2]

The Hearing Examiner found that the withdrawal of Sheridan from the unit was in good faith and was based on the desire of a majority of its four employees not to be represented by the union. When the employees informed respondent in December that three of them wished to leave the union an officer of the Knitwear Association informed Sheridan that it could not withdraw at that time because of the existing union contract. After negotiations began the employees reminded Sheridan of their desire not to remain in the union and shortly thereafter it filed a representation petition and attempted to withdraw from the Association. The union has not claimed during any of the proceedings that it had a majority in Sheridan's unit nor suggested that the loss was the result of any unfair practice.

The withdrawal here was not a bargaining stratagem or the result of dissatisfaction with the course of the negotiations. Cf. Universal Insulation Corp., 149 NLRB No. 124 (1964); Tulsa Sheet Metal Works, supra. The withdrawal does not appear to have prejudiced the union in any manner in its bargaining tactics—there were three negotiating sessions in the month following the withdrawal. Compare Walker Electric Co., supra, where the president of the respondent continued to participate in the negotiations after his "withdrawal" and Detroit Window Cleaners Union, 126 NLRB 63 (1960) where the union did not know

---

1. The majority's insistence that good faith is always irrelevant to a charge of a violation of § 8(a) (1) is misplaced. NLRB v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). As the Supreme Court made clear last term, NLRB v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965), the employer's motivation is irrelevant only where the conduct is "demonstratively destructive of employee rights and is not jus-

tified by the service of significant or important business ends." The two cases from this circuit cited by the majority are not inconsistent with that view.

2. This case-by-case approach to problems in the field of multi-employer bargaining has some court approval. Retail Clerks Union No. 1550 v. NLRB, 117 U.S.App. D.C. 191, 330 F.2d 210 (1964).

of the purported withdrawal until after the contract was completed.

Because the record is so clear on this matter I do not think that a remand is necessary to determine whether the union suffered any disadvantage from the withdrawal even though the issue was not considered either by the Board, which thought a flat rule should be applied, or by the Hearing Examiner, who was concerned solely with the issue of good faith on the part of the employer.

Neither potential instability of the bargaining process nor administrative convenience requires substituting a flat rule prohibiting withdrawal after negotiations have begun in place of an inquiry as to bad faith and possible harmful effects. When the possible disruption of the bargaining process occurs the Board has been fully able to correct the abuse. Administrative convenience, desirable as it surely is, cannot justify introduction of a rigid rule in these circumstances. See, Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 198, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

Not only does the Board's proposed rule put an unnecessary limitation upon the voluntary nature of multi-employer units but it conflicts with the policy so forcefully expressed in International Ladies' Garment Workers Union, AFL–CIO v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L. Ed.2d 1762 (1961) that an employer should not bargain with a non-representative union. If an employer has not withdrawn from a multi-employer bargaining unit, and if such a unit is appropriate, it may be proper to allow or even require him to bargain with a union which has a majority in the overall unit but not among his employees. But the policy of not permitting an employer to bargain with a union which does not represent the choice of his employees furnishes strong reason for allowing withdrawal from the multi-employer unit in the absence of any showing of actual harm to the collective bargaining process or lack of good faith.

The rule approved by the majority is unnecessary, and this case amply demonstrates its unsoundness. There being no evidence of bad faith by the employer or any harmful effect of its withdrawal from the voluntarily formed unit, I would deny enforcement.