**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Wayne JOHNSON, an Individual, d/b/a Carmichael Floor Covering Co.,**

**and**

**John Duncan, an Individual, d/b/a Duncan Floor Co., Respondents.**

No. 20760.

United States Court of Appeals Ninth Circuit.

Oct. 17, 1966.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Marcus W. Sisk, Attys., N.L.R.B., Washington, D. C., for petitioner.

Clifford R. Lewis, Sacramento, Cal., for respondents.

Before HAMLEY, MERRILL and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its cease and desist order issued against Wayne Johnson, d/b/a Carmichael Floor Covering Co., and John Duncan, d/b/a Duncan Floor Co. The Board's decision and order, issued on November 9, 1965, are reported at 155 N.L.R.B. No. 65.

The Board order is based on its finding that, in violation of section 8(a) (5) and (1) of the National Labor Relations Act (Act), 49 Stat. 452, as amended 29 U.S.C. § 158(a) (5) and (1), respondents refused to bargain with Carpet, Linoleum and Soft Tile Local Union No. 1237, Brotherhood of Painters, Decorators and Paperhangers of America, AFL-CIO (Union). Such refusal, the Board found, was manifested by respondents' refusal to acknowledge that they were bound by a collective bargaining agreement executed on their behalf, and by contracting out floor covering installations without first bargaining with the Union.

Respondents concede that had they remained employers of floor covering installers they would have been in violation of the agreement. They contend, however, that they had discontinued the practice of employing such installers and therefore had no duty to recognize the collective bargaining agreement, or to bargain with the Union concerning such discontinuance.

Prior to April 8, 1964, both respondents were engaged in the sale of floor covering at wholesale and retail in the Sacramento, California area, utilizing their own employees to install carpeting which they sold. Both respondents were members of the Sacramento Valley Floor Covering Association (Association), and had authorized the Association to negotiate a multi-employer collective bargaining agreement, binding upon them, with the Union. Such an agreement was executed by the Association and the Union on April 8, 1964.

Immediately before or immediately after this agreement had been executed, respondents notified the Association that they had discontinued their operation as employers of floor covering installers. Respondents advised the Association that thenceforth they would employ independent contractors to install floor covering which they sold, and that they would therefore not be parties to the agreement. The reasons given for this change

in practice were that the previous method was too burdensome, and was not economical. The decision of Duncan was also due, in part, to ill health.

On April 9, 1964, the Association conveyed this advice to the Union. On or about April 10, 1964, respondents each terminated the employment of individuals who had been engaged in installation work. Johnson disposed of all of his installation equipment. From that time on whenever respondents were called upon to arrange for the installation of floor covering which they sold, they engaged independent contractors to perform that work. At no time did respondents undertake to negotiate with the Union concerning the change from personally employed installers, to the contracting out of that work.[1]

The Board argues, in effect, that an employer who has committed himself to engage in multi-employer bargaining may not, after such bargaining is under way, withdraw therefrom by switching to a contracting-out method of getting the work done. We need not decide this question, however, since even assuming that such a switch in methods would entitle an employer to withdraw from multi-employer negotiations already in progress, this would not be permissible unless the switch in methods was accomplished in a legal manner. As indicated below, respondents did not make this change in operating procedure in a legal manner.

Respondents' plans to discontinue such employment and substitute contracting-out arrangements were, under section 8(a) (5) and (d) of the Act, mandatory subjects of collective bargaining with the Union, which was then the certified collective bargaining representative of those employees. See Fibreboard Paper Products v. N.L.R.B., 379 U.S. 203, 209–215, 85 S.Ct. 398, 13 L.Ed.2d 233.[2] Their failure to undertake such bargaining was therefore an unfair labor practice which rendered the change in arrangements invalid.

Respondents do not suggest any other ground on which they could rightfully disavow the collective bargaining agreement. The Board therefore correctly determined that respondents' failure to acknowledge that agreement was an unfair labor practice. See N.L.R.B. v. Jeffries Banknote Co., 9 Cir., 281 F.2d 893, 896. What is said above also requires us to sustain the Board determination that the action of respondents in contracting out floor covering installations without first bargaining with the Union was an unfair labor practice.

The petition will be enforced.

---

1. Respondents contend that there is no evidence of any "refusal" on their part to bargain on the issue of cessation of employment. Duncan, they assert, discontinued his installation operation because his workers quit, and Johnson sold his installation equipment to a new Union labor contractor.

   The Board did not find that respondents had "refused" to bargain on this issue, if by this it is meant that they rejected a request by the Union to bargain. The Board found that respondents did not "undertake" to bargain, before making the change, stating that respondents' decision on this matter was first presented to the Union as a *fait accompli*, by the letter of April 9, 1964. In any event, the Union denied Duncan's testimony that his employees had been directed by the Union to leave his establishment on April 10, 1964, and there was no other evidence supporting Duncan's claim. As the Trial Examiner pointed out, this claim by Duncan is inconsistent with his assertion that he was abandoning installation work using his own employees. The fact that Johnson sold his installation equipment does not tend to show that he did not refuse to bargain on the issue under discussion.

2. Textile Workers Union v. Darlington Mfg. Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827, relied upon by respondents, is not in point. That case involved the closing of an entire plant, not the continuance of essentially the same operation by substituting independent contractors for the employer's own workers.