**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOVER TAVERN OWNERS' ASSOCIA-TION and its 15 Constituent Members et al., Respondents.**

No. 17546.

United States Court of Appeals Third Circuit.

Argued May 9, 1969.

Decided June 11, 1969.

Joseph Yablonski, N. L. R. B., Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Elliott Moore, Attorney, N. L. R. B., on the brief), for petitioner.

Milford Salny, Netcong, N. J., for respondents.

Before McLAUGHLIN, KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before us on a petition for enforcement of the National Labor Relations Board's order issued January 5, 1968, against the Dover Tavern Owners' Association (hereinafter "Association") and its individual members.

The Association was formed by certain tavern owners in Dover, New Jersey, in February 1960. Contracts between individual members of the Association and Local 633 of the Bartenders' Union were scheduled to expire on September 15, 1966, but before the expiration Local 633 merged with another local to form new Local 158, which became Local 633's successor and represented the bartenders employed by the members of the Association.[1]

In July 1966, Local 158 officers met with a committee of the Association to present their contract proposals. The committee agreed to take the proposals before the next Association meeting on July 13, 1966. In September the committee again met with the Union officers and stated that the Association did not wish to negotiate at that time.

Thereafter, the Union filed a series of three refusal to bargain charges against the Association and its members. All of the charges were ultimately withdrawn and on the date of the last withdrawal, January 25, 1967, the Union filed a representation petition with the Board's regional office in Newark, New Jersey. A hearing was held on February 7, 1967, at which both the Union and the individual members of the Association were represented. On February 10, 1967, all members of the Association wrote identical letters to the Association in which they stated: "Gentlemen, please be advised that it is hereby confirmed that you are not authorized to bargain with any labor organization on behalf of the undersigned." These letters were presented at the hearing on February 13, to which date the February 7 hearing had been continued.

The Board concluded that a history of multi-employer bargaining had preceded the filing of the representation petition and that the individual employers' attempts to withdraw from the Association after the representation hearing was opened had been untimely. Accordingly, the Board ordered an election be held; representation by Local 158 was favored at that election; and the Union was certified on July 14, 1967.

---

1. In a letter from its counsel dated March 24, 1966, the Association acknowledged Local 158 as the successor to Local 633.

After its certification, Local 158 requested the Association to commence bargaining, but the Association failed to respond. Counsel advised the Union that the Association had no authority to bargain and that the Association no longer existed. On September 26, 1967, an unfair labor practice complaint was issued against the Association and its members. On January 5, 1968, the Board entered summary judgment against the Association and its members, requiring them or their successors to bargain collectively with the Union upon request, to cease refusing to bargain, and to post appropriate notices.

The issue is whether there was substantial evidence to support the Board's order finding that the Association constituted a multi-employer bargaining unit from which there was no timely withdrawal by the individual members, so that the Association's refusal to bargain with the duly certified representative of the employees constituted a violation of § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) and (1).

Multi-employer bargaining is consensual in nature and all parties must assent before such a relationship can exist. E.g., N.L.R.B. v. Tulsa Sheet Metal Works, Inc., 367 F.2d 55, 57 (10th Cir. 1966); Publishers' Association of New York City v. N.L.R.B., 364 F.2d 293, 295 (2nd Cir.), cert. den. 385 U.S. 971, 87 S.Ct. 509, 17 L.Ed.2d 435 (1966). It is not necessary to show any formal delegation of authority to establish the existence of multi-employer bargaining. As was stated in Western States Reg. Coun. No. 3, Int. Woodworkers v. N.L.R.

B., 130 U.S.App.D.C. 176, 398 F.2d 770, 773 (1968):

" * * * [T]he test to be applied in determining the status of a multi-employer unit is 'whether the members of the group have indicated from the outset an unequivocal intention to be bound in collective bargaining by group rather than individual action * *.'"

The evidence here lends substantial support to the Board's finding that the Association is a multi-employer bargaining unit.[2] At the February 7, 1967, hearing, Charles R. Williams, Secretary-Treasurer of the Association, testified that both in 1962 and 1964 he was a member of a committee of the Association which negotiated contracts with representatives of Local 633.[3] After these contracts were successfully negotiated, the individual members entered separate but identical agreements with the Local.[4] In addition, the Association responded to an inquiry by Local 158 concerning its membership, stating that "the following Taverns are represented by the Dover Tavern Owners' Association * * * [listing them]", and two meetings were held where members of the Association were present along with representatives of Local 158.

All of the above-described evidence leads to the conclusion that the Association clearly evinced an intention to engage in multi-employer bargaining. Cf. N.L.R.B. v. Southwestern Colorado Contractors' Ass'n., 379 F.2d 360, 364 (10th Cir. 1967); N.L.R.B. v. Sheridan Creations, Inc., 357 F.2d 245, 247 (2nd Cir.), cert. den. 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1966); N.L.R.B. v. Sklar, 316 F.2d 145, 149 (6th Cir. 1963). On this record, we conclude that the

---

2. In its "Decision and Direction of Election" in the representation proceeding, the Board concluded: " * * * we find that the Dover Tavern Owners' Association, by its committee's negotiation and its members' acceptance of the 1962 and 1964 contracts, had created a multiemployer unit for the purposes of collective bargaining."

3. This testimony was corroborated by John MacLean, an officer of Local 633, who at-

tended the 1962 and 1964 contract negotiations mentioned by Mr. Williams between the Association committee and Union representatives.

4. The signing of individual contracts does not negate the existence of a multi-employer unit. See N. L. R. B. v. Sheridan Creations, Inc., 357 F.2d 245 (2nd Cir.), cert. den. 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1966).

Board's finding that the Association was a multi-employer bargaining unit was supported by substantial evidence and may not be overturned.

Having decided that the Board's determination that the Association was a multi-employer bargaining unit was justified on this record, we must decide whether the members effected a timely withdrawal from the Association or whether the Association in fact existed when the Union requested bargaining so that it could be required to negotiate.

On February 7, 1967, at the representation hearing, the Secretary-Treasurer of the Association testified that as of that date the Association was still in existence. The evidence shows that no member of the Association had communicated his desire to withdraw before all members sent the February 10 letter to the Association.[5] Even those letters did not purport to effect withdrawal from the Association; they simply stated that the Association was not authorized to bargain on their behalf. Such a statement recognizes, at least impliedly, that the author of each letter was presently a member of an existing organization.

Respondent points out that the record fails to disclose that any member of the Association paid dues after the year running from July 1966 to July 1967.[6] In addition to the testimony recited above, the evidence demonstrated a general laxity toward the Association's bylaws from the time of its inception. In view of that history, we cannot say that dues delinquency alone conclusively established a withdrawal from the Association on this record.

■ Once multi-employer bargaining is undertaken, it must be continued until it can be terminated at an appropriate time. It is clear that, considering the February 10 letter as an attempted withdrawal from the bargaining unit, it can only be effective upon a showing of substantial justification. Cf. N.L.R.B. v. John J. Corbett Press, Inc., 401 F.2d 673, 675 (2nd Cir. 1968); N.L.R.B. v. Jeffries Banknote Company, 281 F.2d 893, 895 (9th Cir. 1960). The Association had recognized Local 158 as the bartenders' bargaining representative and had met with them to consider the 1966 contract demands. There is no evidence in the record that the members unequivocally withdrew, prior to February 10, 1967, their authorization to bargain previously given to the respondent.[7]

---

5. During the February 7 hearing, the follow testimony was given by Charles Williams, the Association's Secretary-Treasurer:

"Q. Now, with regard to your present membership, have any of the members indicated, association members, indicated that it was withdrawing from your association?

"A. Withdrawing from the—I mean nobody has told me that they were withdrawing.

"Q. All right. You say nobody has told you that they are withdrawing from the association, is that correct?

"A. That's correct.

"Q. And I believe you testified that there merely are some members or people who have not paid their dues?

"A. That's right.

"Q. But you have nothing in writing to the effect of the resignation or the withdrawal from the association of any of these people?

"A. No, sir."

6. Fred's Tavern, Pal Office Cafe, and Ken's Tavern had paid dues up to July 1966; Idle Hour, Dutton Hotel, Old Tye Tavern, Marty's Essex Tavern, Grande's Tavern, East End Tavern, Charlie's Taproom, Green Lantern, Johnny's Tavern, and Bill and Dot's Taproom had paid their dues up to July 1967.

7. At most, the record justifies an inference that respondent wanted to show in the unfair labor practice proceeding that in the fall of 1966, its members orally withdrew their authorization to bargain from the respondent Association. See Memorandum In Opposition to Motion for Summary Judgment. However, even assuming such withdrawal, it was ineffective for failure to communicate it to Local 158, which communication the above Memorandum and attached Affidavit do not allege. At the most, this affidavit alleges a refusal of the members to bargain with Local 158 during July-December 1966 because the Local's location in Clifton, New Jersey, as opposed to Dover, "was too far

We hold that the attempted withdrawal in February 1967 by the respondent's members from the existing organization for purposes of collective bargaining without circumstantial justification was untimely.[8] See N.L.R.B. v. Tulsa Sheet Metal Works, Inc., 367 F.2d 55, 58 (10th Cir. 1966).

The Board's order will be enforced.

away to service" the members "properly," and its demands were "excessive." Evidence of communicated refusal to bargain through the Association in and after September 1967 was irrelevant in view of the finding of an untimely withdrawal of authority to bargain in February 1967, which finding respondent did not challenge specifically or offer evidence to refute in the above Memorandum and Affidavit. Under such circumstances, the grant of Summary Judgment by the Board in the unfair labor practice proceeding was justified. See Robin Construction Company v. United States, 345 F.2d 610 (3rd Cir. 1965).

Our cases and the United States Supreme Court have held that "[a]n employer may not relitigate issues determined at the election stage absent a showing of newly discovered or previously unavailable material evidence." N. L. R. B. v. Certified Testing Laboratories, Inc., 387 F.2d 275, 279 (3rd Cir. 1967); Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. Puritan Sportswear Corp., 385 F.2d 142 (3rd Cir. 1967).

8. Since the Union was duly certified on July 14, 1967, the Association was obligated to bargain for at least one year. Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954).