**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CENTRAL PLUMBING COMPANY, Respondent.**

No. 73–1437.

United States Court of Appeals, Sixth Circuit.

March 21, 1974.

Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Asst. Gen. Counsel, William F. Wachter, Jane P. Schlaifer, Attys., National Labor Relations Board, Washington, D. C., on brief, for petitioner.

Robert J. Brown, and Dean E. Denlinger, Smith & Schnacke, Dayton, Ohio, on brief, for respondent.

Before PHILLIPS, Chief Judge, and EDWARDS and MILLER, Circuit Judges.

EDWARDS, Circuit Judge.

The National Labor Relations Board petitions this court for enforcement of its order (reported at 198 N.L.R.B. #135) requiring respondent to accept and be bound by a collective bargaining agreement between a union and a multiemployer group from which it had withdrawn in the midst of negotiations.

Respondent, Central Plumbing Company, had been for some years a part of the Dayton Association of Plumbing Contractors, a multiemployer unit which bargained collectively with the Dayton plumbers' union,[1] and it had signed three successive two-year agreements negotiated between the union and the association since 1964. In March of 1970 the employers and the union met again to negotiate wages and working conditions. These negotiations ultimately resulted in material amendments to the 1966 agreement between the Dayton Association of Plumbing Contractors and the union.

It is undisputed that, initially, Central Plumbing Company was a party to the 1970 negotiations. In fact, Elking, a vice president of Central Plumbing, headed the negotiations for the Dayton Association of Plumbing Contractors concerning residential construction at the beginning. In the course of those negotiations, however, Elking's proposals were rejected by the union. At one point the union negotiating representative told Elking if the offer that Elking had just made was the best offer he could make, that it would be best for his company to go nonunion. Subsequently, Central Plumbing did withdraw from the negotiations and did go nonunion. This took place, however, without formal notice to the union, although with asserted oral notice to a union representative.

The union filed an unfair labor practice charge which, after hearing by a Trial Examiner, resulted in the Board's finding that the company had violated Section 8(a)(5) and (1) of the National Labor Relations Act, as amended, (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.) by unilaterally withdrawing from a multiemployer unit found to be

---

1. United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local Union No. 162, AFL–CIO.

appropriate, and by refusing to accept and be bound by the collective bargaining agreement negotiated by the union and the association. The Board's order required the company to cease and desist from the unlawful conduct found and affirmatively required it to honor the collective bargaining agreement entered into between the union and the association dated May 1, 1970.[2]

■ At least two important questions [3] are presented in this case. First, was Central Plumbing's withdrawal justified, as claimed by respondent, because negotiations were at an impasse?

Second, if not, did respondent otherwise accomplish a legal and effective withdrawal from the multiemployer unit?

■ As to the first question, the Board found that in this case no impasse had occurred. It is undisputed that in March of 1970 negotiations began for another amendment of the 1966 agreement between the Plumbers Union and the Dayton Association of Plumbing Contractors. Although the association was composed of both union and nonunion contractors, it negotiated for its union contractors as a group, of which respondent (and its predecessor company) had long been a part. Respondent was a residential contractor and, historically, separate negotiations were conducted concerning residential work. Elking headed the residential negotiations with the Plumbers Union when negotiations began. Negotiations concerning commercial work resulted in an agreement which was ratified May 5, 1970, but which left a welder safety

problem and the residential work agreement to be worked out.

In December of 1970 Elking made a wage proposal concerning residential work and the union representative emphatically rejected it. As indicated above, the union representative said to Elking in the meeting that if he (Elking) couldn't do any better, he should go nonunion.

Subsequently, at a social gathering, Elking told another union representative that he was going nonunion, but received no reply. And when the respondent did go nonunion, the union filed an official protest in writing.

The record clearly indicates that after respondent's withdrawal, negotiations continued. These resulted on December 30, 1970, in a solution to the welder safety problem and on March 16, 1971, in the execution of a new residential addendum to the contract.

■■ It is clear to us, as it was to the Board, that mere rejection of a bargaining proposal does not create an impasse. Here at all times the negotiating parties were operating under the terms of the previous agreement. Negotiations were never broken off and they ultimately resulted in a collective bargaining agreement in the residential (as well as the commercial) field. The fact that respondent was not happy with the results of the group bargaining is not indicative of an impasse, nor does it justify respondent's failure to adhere to the group bargaining result. NLRB v. Tulsa Sheet Metal Works, Inc., 367 F.2d 55 (10th Cir. 1966).

■ As to whether respondent's withdrawal from the bargaining unit

---

2. Actually both the welders' safety agreement and the residential agreement were negotiated after the May 1, 1970, date. The residential agreement, which is applicable to respondent, remained a separate document as an addendum to the May 1, 1970, agreement, when all of the agreements between the parties were integrated and signed on July 1, 1971.

3. Respondent also contends that it cannot be found in violation of § 8(a)(5) because the

agreement ultimately negotiated contained an illegal union security clause. Respondent concedes that, as the Board found, this fact played no role in its withdrawal and the illegal provision has been removed by a settlement agreement approved by the Board. Under these circumstances, although respondent has preserved the issue, we hold that it does not serve to insulate respondent from the Board's 8(a)(5) violation finding.

was justified on other grounds, we again find ourselves in agreement with the Board. As this court has said, "Multiemployer [bargaining] units are voluntary and consensual." Detroit Newspaper Publishers Ass'n v. NLRB, 372 F.2d 569, 570 (6th Cir. 1967). But where there has been prior participation in such bargaining, we believe that, absent unusual circumstances or voluntary agreement, withdrawal must be accomplished prior to the beginning of negotiations. NLRB v. Johnson Sheet Metal, Inc., 442 F.2d 1056 (10th Cir. 1971); Sheridan Creations Inc., 148 N.L.R.B. 1503, enf'd, 357 F.2d 245 (2d Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967). Further, such withdrawal to be effective should be made known to both the union and the employer group in definitive terms—preferably in writing.

The findings of fact of the Board are supported by substantial evidence on this whole record, and enforcement of the Board's order is granted.