**Application of SUNRISE UNDERGARMENT CO., INC., Petitioner, For a Judgment Staying the Arbitration Commenced by UNDERGARMENT & NEGLIGEE WORKERS' UNION, LOCAL 62, I.L.G.W.U., Respondent.**

No. 75 Civ. 5347.

United States District Court,
S. D. New York.

Sept. 29, 1976.

Eli Uncyk, Simon, Uncyk & Jacobs, New York City, for petitioner.

Marshall L. Rosenberg, Lieberman, Aronson & Rosenberg, New York City, for respondent.

MEMORANDUM OPINION

PIERCE, District Judge.

Petitioner Sunrise Undergarment Co. (the Employer) instituted this action to stay arbitration proceedings commenced against

it by respondent Undergarment & Negligee Workers' Union Local 62, I.L.G.W.U. (the Union). At the commencement of the lawsuit, the Employer sought a preliminary injunction against the Union; however, that application was withdrawn by consent order dated March 9, 1976. The Union now moves for summary judgment denying the Employer's petition for a stay of arbitration. For the reasons that follow, the motion is granted and the petition denied.

On September 26, 1975, the Union served the Employer with a notice of intention to arbitrate pursuant to two collective bargaining agreements entered into between the Union and the Allied Underwear Association, Inc. (the Association), a multi-employer bargaining unit of which the Employer was a member. The first agreement (the 1972 Agreement) was dated July 1, 1972 and expired June 30, 1975; the second agreement (the 1975 Agreement) was dated July 1, 1975. The notice asserted that the Employer had failed to make payments to certain Union funds as required by *each* of the two agreements.[1]

In October 1975, the Employer filed a petition to stay arbitration in the Supreme Court of the State of New York, New York County. By a removal petition filed October 28, 1975, the Union transferred the controversy to this forum.

In its petition, the Employer seeks a stay of arbitration under the two agreements on the ground that the Union has failed to follow certain pre-arbitration procedures and also on the ground that the arbitrator is biased. With regard to the 1975 Agreement, the Employer asserted the additional claim that it had effectively withdrawn from the multi-employer bargaining unit and thus that it was not bound by the terms of that agreement.

The Union now moves for summary judgment denying the petition. Initially, the Union claims that the issues raised are all matters which must first be placed before the arbitrator. In the alternative, the Un-

ion argues that even if there are questions for the Court present, the Union is entitled to summary judgment on these issues since there are no disputes as to material facts and since as a matter of law the Employer's defenses to arbitration are without merit. The Employer asserts that it, not the Union, is entitled to summary judgment on the issue of the withdrawal, or in the alternative that there are issues of material fact which preclude the grant of summary judgment to either party. The Employer also argues that the issues of compliance with pre-arbitration procedures and arbitrator bias must be resolved by the Court, and that those issues are also inappropriate for summary disposition. Having considered the matter, the Court concludes that the Employer's attempted withdrawal from the Association was ineffective as a matter of law, and that the other issues are matters for the arbitrator in the first instance.

## The Employer's Attempted Withdrawal

Although the parties hereto have failed to submit statements pursuant to Rule 9(g) of the Local Rules of this Court, it is clear that the following matters are not in dispute.

For many years, the Employer was a member of the sixty-member multi-employer bargaining unit known as the Allied Underwear Association. Since the Employer employed only about 35 of the 5,000 employees involved in the Association, it has never actively participated in negotiations between the Union and the Association. The Association bargains on behalf of its members concerning wages, hours and other working conditions of their employees. There is no dispute that, as a member of the Association, the Employer was bound by the terms of the 1972 Agreement entered into between the Union and the Association for a term commencing July 1, 1972 and expiring June 30, 1975.

While the Employer states that, in the past, negotiations for the industry-wide

---

1. Following the commencement of this action, the Union served a second notice of intention to arbitrate with respect to the alleged failure of the Employer to make similar payments during the period from July 1, 1975 through November 1, 1975.

contract began in the month of April, it is undisputed that the negotiations leading up to the 1975 Agreement commenced on March 19, 1975. At that first meeting between the Union and the Association, proposals and counterproposals for the renewal of the contract were exchanged and discussed; the negotiations were thereafter adjourned until April 21, 1975.

On or about March 31, 1975, the Employer notified the Association that it was withdrawing from the multi-employer unit and informed the Union that it would not renew the contract scheduled to expire June 30, 1975. Upon receipt of this notice, the Union took the position that the attempted withdrawal was untimely and that it would hold the Employer to the 1975 Agreement. In an affidavit tendered on this motion, the Employer's president represents that he was unaware of the commencement of negotiations on March 19, 1975. However, it is not disputed that the Union had requested the commencement of negotiations with the Association as early as March 3, 1975.

Following five further negotiating sessions, the Union and the Association concluded an agreement on June 23, 1975. While there have been informal direct communications between the Employer and the Union following the execution of the 1975 Agreement, there has been no individual bargaining between the parties. According to the affidavit of the Employer's president, the Employer resigned from the Association to end "constant harassment" at the hands of the Union, and because the Employer felt that the Association did nothing to protect its smaller members. The employees of the Employer are still all members of the Union.

■ Finally, there is some dispute as to the intent of the Employer's notice of withdrawal. The Employer states that it intended to withdraw effective March 31, 1975; the Union states that the notice evidences an intention to withdraw as of June 30, 1975. Since on this motion the Court must resolve all inferences in favor of the Employer, the notice will be considered as an attempt at withdrawal as of March 31, 1975. However, the differing inferences are not with respect to any material fact, since under the controlling caselaw the attempted withdrawal was ineffective.

■ The issue of the Employer's withdrawal, since it goes to the question of whether a contract exists between the parties, is a matter for judicial resolution, as the decisions which follow indicate. See also *Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co.*, 312 F.2d 181 (2d Cir.), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1962).

In *N. L. R. B. v. Sheridan Creations, Inc.*, 357 F.2d 245 (2d Cir. 1966), *cert. denied*, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967), the Circuit Court adopted the National Labor Relations Board rule that neither union nor employer may withdraw from a multi-party bargaining unit once negotiations have commenced absent consent by the other party or "unusual circumstances" justifying untimely withdrawal.

> "Withdrawal should be restricted to the period before negotiations to assure that it is not used as a bargaining lever. Since this is the purpose of the rule, it is used as an alternative to an inquiry into good faith." (*Id.* at 248)

The rule barring untimely withdrawal approved by *Sheridan Creations* had its origin in the Board's decision *Retail Associates, Inc.*, 120 N.L.R.B. 388 (1958), and has been followed by numerous courts to this day. See *N. L. R. B. v. Beck Engraving Co.*, 522 F.2d 475 (3d Cir. 1975); *N. L. R. B. v. Central Plumbing Co.*, 492 F.2d 1252 (6th Cir. 1974); *N. L. R. B. v. Paskesz*, 405 F.2d 1201 (2d Cir. 1969); *N. L. R. B. v. John J. Corbett Press, Inc.*, 401 F.2d 673 (2d Cir. 1968); *N. L. R. B. v. Southwestern Colorado Contractors Ass'n*, 379 F.2d 360 (10th Cir. 1967).

■ The principle constitutes a per se rule of labor law which countenances only one narrow exception for "unusual circumstances." See *N. L. R. B. v. Spun-Jee Corp.*, 385 F.2d 379 (2d Cir. 1967). Contrary to the position asserted by the Employer, the rule does not allow inquiry into the

question of whether the withdrawal was made in good faith.

"Multi-employer bargaining is based on the consent of the parties to treat one another through the agreed units. A shift in membership after negotiations have begun has lively possibilities for disrupting the bargaining process. In a case such as this, good faith withdrawal of a small unit might in practice have minimal or no effect. However, the potential for disruption is sufficient to justify the Board in adopting a uniform rule for all cases that withdrawal is not timely once bargaining has begun." (*Sheridan Creations, supra*, 357 F.2d at 248)

In light of the caselaw, the Court must conclude that the plaintiff's opposition to the instant motion is without merit and that there are no issues of material fact presented. There is no dispute that the Employer was a member of the Association at the time negotiations began on March 19, 1975. It is undisputed that the Employer did not reveal its intentions to resign from the unit until twelve days later. There is no dispute that negotiations between the Union and the Association had commenced. There is no claim that the Union consented to the attempted withdrawal. Thus, the attempted withdrawal was untimely, and the only remaining question is whether the withdrawal can be justified by "unusual circumstances." The Court determines that it cannot.

While the phrase "unusual circumstances" is rather vague on its face, the Board and the Circuit Courts have set forth an extremely narrow definition of that exception to the per se rule. Thus, the Board has held that where the employer is a debtor-in-possession, following the filing of a petition in bankruptcy, who intends to close out his business in the area involved, sufficient "unusual circumstances" are presented to justify tardy withdrawal. See *U. S. Lingerie Corp.*, 170 N.L.R.B. 750 (1968). Further, while the Board has specifically rejected the notion that a genuine impasse in negotiations can justify untimely withdrawal, see *Hi Way Billboards*, 1973 CCH NLRB ¶ 25,-785 (September 18, 1973), four Circuit Courts (not including the Second) have held that a genuine impasse is a ground for late withdrawal. See *N. L. R. B. v. Beck Engraving Co., supra*, 522 F.2d at 483, and cases cited therein. In one decision, the Circuit Court indicated that an employer's legitimate economic decision to close down one complete division of his business and contract out the work involved might constitute "special circumstances," but the issue was left unresolved. See *Spun-Jee Corp., supra*, 385 F.2d at 382. Finally, one decision has held that where an employer voluntarily allows his membership dues to fall into arrears, no "unusual circumstances" are present. See *N. L. R. B. v. Paskesz, supra*, 405 F.2d at 1202.

It is clear that the "unusual circumstances" exception has been narrowly construed by the Board and by the courts. The Employer cites no decision which even suggests that the circumstances of its attempted withdrawal constitute unusual circumstances. The Employer's argument that the withdrawal should be allowed since only one negotiating session had been held is unsupported by caselaw. "[I]t would seem that once the parties meet and discuss a new contract, 'bargaining' has begun, no matter how speculative the discussion is." *Spun-Jee Corp., supra*, 385 F.2d at 382. Further, the Employer's argument that it should be allowed to withdraw in light of its small size and insignificance in the negotiations was specifically rejected by the Circuit Court in *Sheridan Creations, supra*, 357 F.2d at 248.

The Court rejects the other arguments advanced by the Employer as insufficient as a matter of law. The claim that the Employer did not receive actual notice of the commencement of the negotiations is without merit; the Employer had for many years specifically designated the Association as its agent for dealing with the Union. As a matter of law, notice to the Association was notice to the Employer. Indeed, if the agency relationship between the Employer and the Association is not interrupted by the failure of the Employer to pay its

membership dues, see *Paskesz, supra,* 405 F.2d at 1202, the Employer cannot argue that no agency relationship existed as of March 19, 1975, simply because the negotiations allegedly commenced earlier than was the case in prior years. Dissatisfaction with the progress of negotiations is not a ground for late withdrawal, nor is there any merit to the Employer's reliance upon its claim that it withdrew to avoid "harassment" by the Union. See *N. L. R. B. v. Tulsa Sheet Metal Works, Inc.,* 367 F.2d 55, 58–59 (10th Cir. 1966). If the right of withdrawal were to depend upon such unpredictable factors as actual notice to each member of the multi-employer group, or the dissatisfaction of any one employer with the conduct of the Association, the whole purpose of multi-employer bargaining would be severely undermined, and the "lively possibilities" for disruption would be great. See *Sheridan Creations, supra.*

"The rights of the parties [with respect to withdrawal] should accrue simultaneously, based upon the occurrence of an event which neither can manipulate (e. g., impasse). Were the rule otherwise, the party whose right accrues first would be given a tremendous bargaining advantage and leverage." (*Beck Engraving Co., supra,* 522 F.2d at 483)

In this case there is no dispute that the negotiations in question never reached any impasse; there is no claim that the Employer was about to file in bankruptcy or relocate out of the area; in short, no economic reason is advanced by the Employer such as would even give this Court pause to consider whether "unusual circumstances" are presented.

Accordingly, the Court concludes that the attempted withdrawal by the Employer was ineffective as a matter of law, and that the Union's motion for summary judgment denying the petition to stay arbitration must be granted as to this claim.

**2.** The parties have suggested that the issue of arbitrator bias has been mooted by the untimely death of the distinguished arbitrator chosen under the agreements. However, in light of the long delay in arbitration caused by petitioner's

The Court reaches the same conclusion with respect to the other issues raised. However, it does so on the ground that these issues are not properly raised in this Court at this time. The Employer's claim of arbitrator bias is one which may be raised on a petition to vacate an award, see 9 U.S.C. § 10; however, it is premature at this juncture. See *Sanko S. S. Co. v. Cook Industries, Inc.,* 495 F.2d 1260, 1264 n. 4 (2d Cir. 1973); *In re Fair Wind Maritime Corp.,* 76 Civ. 2293 (S.D.N.Y. June 16, 1976), and cases cited therein.[2]

Finally, the issue of compliance with pre-arbitration procedures is one for the arbitrator, particularly since this question is intertwined with the grievance itself. See *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 556–57, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). This disposition is particularly appropriate in this case since the Court has determined that the Union is entitled to proceed to arbitration on the merits of its grievances under both the 1972 and the 1975 Agreements. See *Id.* at 557, 84 S.Ct. 909.

Accordingly, there being no issues of material fact presented with respect to the issue of the Employer's attempted withdrawal, and the Court having concluded that the attempt was ineffective as a matter of law, the motion for summary judgment with respect to that claim is hereby granted. Since the other issues raised with respect to the agreements are not properly raised in this forum at this time, the Union's motion for summary judgment with respect to those issues is also granted.

The petition is denied.

SO ORDERED.

action here, the Court has chosen to address the merits of the claim, since it is one which is conceivably capable of repetition. Cf. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911).