John P. MACK, Plaintiff-Appellant,

v.

UNITED STATES of America, Federal Bureau of Investigation, Defendants-Appellees.

No. 132, Docket 86–6097.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1986.

Decided March 30, 1987.

Glenn Warshal, Mineola, N.Y. (Jack B. Solerwitz, Mineola, N.Y., of counsel), for plaintiff-appellant.

Harriet L. Goldberg, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Steven E. Obus, Asst. U.S. Atty., New York City, of counsel), for defendants-appellees.

Before OAKES, MINER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff appeals from a final judgment granting summary judgment in favor of defendants. The district court, 653 F.Supp. 70 (S.D.N.Y.1986), held that the United States was immune from suit and that plaintiff had failed to state a claim upon which relief could be granted.

*Background*

This case arose out of appellant's dismissal as a special agent of the Federal Bureau of Investigation ("F.B.I.") due to alleged use of cocaine and lack of candor in his statements to the F.B.I. regarding that use. On July 13, 1983, appellant was interviewed by an F.B.I. superior concerning possible cocaine use by appellant and by a fellow agent, Bill Tschernjawski, with whom appellant was acquainted. Appellant was asked to submit to urinalysis, take a polygraph test, and sign a sworn statement denying cocaine use.

Appellant submitted to urinalysis (after signing a waiver form which specified the F.B.I.'s advice to him that he was under no obligation to provide a urine sample and any "information" he supplied would not be used against him in any criminal proceeding) on July 13, 1983, and provided a sworn statement denying cocaine use. On July 15, 1983, appellant was informed that he had tested positive for cocaine use. He again signed a sworn statement in effect denying cocaine use and made minor corrections to his prior statement (which was actually signed on July 15). Appellant refused to take a polygraph test on the advice of an attorney.

Appellant was suspended from the F.B.I. on July 15, 1983, and initiated this litigation on July 18, 1983. A letter dated July 29, 1983 from the Assistant Director of the Administrative Services Division of the F.B.I. informed appellant that the F.B.I. was considering his dismissal due to use of cocaine and lack of candor regarding that use. The letter informed appellant that he had a right to respond in writing to the charges against him. Appellant's counsel responded to the charges, denying them, by letter dated August 11, 1983. That letter requested an opportunity to make an oral response, and noted that prior requests for a copy of the F.B.I. laboratory examination "and of all other investigations carried out against Agent Mack" had been denied.

No specific response was made to these requests. Rather, by letter dated September 9, 1983, F.B.I. Executive Assistant Director William L. Colwell informed appellant that he was being terminated for use of cocaine and lack of candor. The letter further advised appellant that his counsel's response of August 11, 1983 had been considered, and that appellant could appeal his dismissal to the Director of the F.B.I. Appellant did not appeal.

Appellant's action sought "injunctive, declaratory, and monetary damages for his wrongful termination." He asked for reinstatement, back pay, one million dollars in compensatory damages, three million dollars in punitive damages, costs and disbursements including attorneys' fees, and a declaration of illegality concerning his termination. He alleged jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1982), and under 28 U.S.C. § 1331 (1982), the general federal question jurisdictional statute. Appellant asserted that the government violated his fifth amendment due process property and liberty rights and his fourth amendment privacy rights. He also sought relief under the Back Pay Act, 5 U.S.C. § 5596 (1982). The trial court granted defendants' motion for summary judgment under the following rationales:

1. The United States did not waive its sovereign immunity from suit with respect to any of the statutes relied on by plaintiff for relief.

2. Plaintiff's fifth amendment due process property rights were not violated since, as a member of an "excepted" service, he had no property interest in his job.

3. Plaintiff's fifth amendment due process liberty interests were not violated, since there was no allegation or proof that the reasons for his dismissal were ever disseminated.

4. Plaintiff's fourth amendment rights were not violated by the urinalysis because, assuming that a search of constitutional dimensions occurred, it was not unreasonable given the minimally intrusive nature of the urinalysis, plaintiff's diminished expectation of privacy as an F.B.I. agent, and the compelling governmental interest in assuring that F.B.I. agents are not involved in drugs.

5. There was no invasion of privacy actionable under the Federal Tort Claims Act, since there is no common law tort of invasion of privacy under the law of the place where the allegedly tortious act occurred, New York.

### Sovereign Immunity and the Federal Tort Claims Act

■ The district court was clearly correct in holding that the general federal question jurisdictional statute, 28 U.S.C. § 1331, does not constitute a waiver of sovereign immunity by the United States. *Keene Corp. v. United States*, 700 F.2d 836, 838 n. 3, 845 n. 13 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). As this court stated in *Doe v. Civiletti*, 635 F.2d 88, 94 (2d Cir. 1980), "[s]ection 1331 is in no way a general waiver of sovereign immunity. Such a waiver, if it exists at all, must be sought in the statute giving rise to the cause of action."

■ Nor is the situation altered by appellant's invocation of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As Judge Winter pointed out in *Keene Corp.*, a *Bi-*

*vens* action will only lie against a federal government official. *Bivens* actions against the United States are routinely dismissed. *See Keene Corp.*, 700 F.2d at 845 n. 13.

Appellant also alleged jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Section 1346(b) does constitute a waiver of sovereign immunity by the United States with respect to:

> civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*

*Id.* (emphasis added).

The only cause of action arguably cognizable under New York tort law that appellant has alleged is an invasion of privacy caused either by the urinalysis and the F.B.I. investigation (intrusion), or the stigmatization suffered as a result of the investigation (false publicity). But the government makes a compelling case that there is no common law tort of invasion of privacy in New York outside of the limited statutory prohibition of commercial exploitation of a person's name, portrait, or picture without written consent. This has been reaffirmed as recently as 1985 by the New York Court of Appeals (despite several predictions from federal courts in the nineteen seventies that New York would recognize a common law right of privacy). *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985) (and cases cited therein):

> We have in the past recognized that, in this State, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51 . . . . In these cases, we took cognizance of the limited scope of the statute as granting protection only to the

extent of affording a remedy for commercial exploitation of an individual's name, portrait or picture, without written consent.

65 N.Y.2d at 140, 480 N.E.2d 349, 353, 490 N.Y.S.2d 735, 739 (citations omitted).

■ Thus the predictions made in cases such as *Birnbaum v. United States*, 588 F.2d 319, 325–26 (2d Cir.1978), about the probable development of a common law right of privacy in New York have not proved accurate, and there is accordingly no basis for this suit under the Federal Tort Claims Act.

### Fifth Amendment Due Process (Property)

■ Public employees may have due process property rights in their positions only if they have an expectation of continued employment created by legislation, contract, or policy. *See Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972); *see also Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). Appellant concedes on appeal that F.B.I. agents have no statutory right to continued employment, are "excepted" from the competitive civil service, and can be discharged with or without cause. He asserts, however, that an agent cannot be discharged for "certain impermissible reasons" such as race, gender, religious belief, or gravidity. While it is true that even "excepted service" public employees cannot be discharged for constitutionally impermissible reasons, appellant has failed to allege any such reason for his termination.

■ Appellant also argues that his punishment bears no reasonable relationship to the charges against him, but as an "excepted service" employee he has no right to hold the government to a "reasonable relationship" standard. *Doe v. Department of Justice*, 753 F.2d 1092, 1100 (D.C.Cir.1985).

### Fifth Amendment Self-Incrimination

■ Appellant cites *Uniformed Sanitation Men Association v. Commissioner*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), and *Kalkines v. United States*, 473

F.2d 1391, 200 Ct.Cl. 570 (1973), for the proposition that his refusal to submit to polygraph analysis, or the result of a urinalysis performed under duress, cannot constitutionally be the basis for his dismissal because that would violate his privilege against self-incrimination. Even assuming that appellant was fired for these reasons, the cases are inapposite. Both *Kalkines* and *Uniformed Sanitation Men* involved public employees who were fired for refusing to incriminate themselves and who were not promised immunity from prosecution. By way of contrast, appellant was explicitly promised throughout the administrative investigation that any "information" resulting therefrom (including urinalysis findings) would *not* be used against him in criminal proceedings.

### *Fifth Amendment Due Process (Liberty)*

■ The district court was correct in its holding that in order to make out a due process liberty claim for injury to reputation, a plaintiff must show that the defendant published or disseminated false defamatory information. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547 n. 13, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985); *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Although plaintiff alleged stigmatization, he did not allege publication or dissemination.

### *Fourth Amendment*

■ Appellant's claim that the use of a pen register implicates fourth amendment rights is meritless. The Supreme Court has explicitly held that the placing of a pen register on a telephone is not a "search" within the meaning of the fourth amendment. *Smith v. Maryland,* 442 U.S. 735, 745–46, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

Appellant's other fourth amendment claim is based upon the taking of a urine sample. The evidence before the trial court unequivocally showed that appellant consented to the urinalysis. The waiver form signed by appellant provided that:

I have been advised that I am under no obligation to provide a urine sample in connection with this administrative inquiry and I have further been advised that any information I supply would not be used against me in any criminal proceeding. Therefore I voluntarily submit to providing a urine specimen. . . .

At his deposition appellant was asked if the government forced him to provide a urine sample. He replied:

No. I was totally cooperative at that point and happy to provide any information they wanted.

After the deposition and after appellees moved for summary judgment, appellant submitted an affidavit swearing that:

6. On July 13, 1983 Mr. Walton told me that if I did not submit to a polygraph exam, urine analysis and provide sworn statements, it would definitely have a negative influence on "their" final decision regarding my guilt.

7. I agreed to submit to the aforementioned tests out of imminent fear that I would lose my job point blank if I did not [*sic*] do otherwise.

8. I was coerced into giving the above urine analysis and sworn statements, since the threat to my career was conveyed by a high-ranking official in the New York office.

It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment. *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Reisner v. General Motors Corp.,* 671 F.2d 91, 93 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982); *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

As we stated in *Perma Research:*

If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of

summary judgment as a procedure for screening out sham issues of fact.

*Id.*

■ Accordingly, since the evidence before the trial court established appellant's consent to the taking of a urine specimen,[1] there was no need for the trial court to have considered the more complex aspects of the fourth amendment issue, such as appellant's expectation of privacy, the degree of the search's intrusiveness, and whether a reasonable suspicion of appellant's misconduct existed.[2] The Government has maintained at all stages of this proceeding that appellant consented to the urinalysis, and it is perfectly appropriate for us to affirm on a ground other than that upon which reliance was placed below. *Schachter v. Whalen,* 581 F.2d 35, 36 & n. 1 (2d Cir.1978) (per curiam).

### The Back Pay Act

■ Appellant also seeks relief under the Back Pay Act, 5 U.S.C. § 5596. By its very terms, this statute only applies to "[a]n employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action...." 5 U.S.C. § 5596(b)(1). Since no "appropriate authority" has determined that appellant was affected by an unjustified or unwarranted personnel action, he is not entitled to rely on the Back Pay Act for relief.

1. A search conducted pursuant to consent constitutes one of the long recognized exceptions to the fourth amendment warrant and probable cause requirements. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973).

2. The court below assumed "that the requirement of a urine sample constitutes a search" upon the authority of *Shoemaker v. Handel,* 619 F.Supp. 1089, 1098 (D.N.J.1985), *affirmed,* 795 F.2d 1136 (3d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 577, 93 L.Ed.2d 500 (1986), and *Storms v. Coughlin,* 600 F.Supp. 1214, 1218 (S.D.N.Y. 1984), but concluded that the search here was in any event reasonable. We note that in *Storms*

### Conclusion

The court below properly granted summary judgment dismissing the complaint, and that judgment is accordingly affirmed.

*v. Coughlin,* the parties agreed that a urinalysis constitutes a fourth amendment search, 600 F.Supp. at 1217, and that in *Shoemaker v. Handel,* the district court found a urinalysis to be a search, 619 F.Supp. at 1098, citing *Storms v. Coughlin,* and the issue was conceded without argument on appeal, 795 F.2d at 1141. *But Cf. National Treasury Employees Union v. Von Raab,* 808 F.2d 1057, 1060, 1062 (5th Cir.1987) (Higginbotham, J., specially concurring), questioning whether requiring urine specimens from applicants for sensitive positions in the United States Customs Service "is a search or seizure at all."