**ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, AFL–CIO, Plaintiff,**

v.

**SIMPLEX GRINNELL LP, Defendant.**

No. 01–CV–6539L.

United States District Court, W.D. New York.

March 19, 2003.

---

4. See *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983).

Mimi C. Satter, Satter & Connor, Syracuse, NY, William W. Osborne, Jr., Jason J. Valtos, Osborne Law Offices, P.C., Washington, DC, for Plaintiff.

Daniel J. Moore, Harris Beach, LLP, Pittsford, NY, Jonathan L. Sulds, Gregory W. Knopp, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### Introduction

Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL–CIO ("Local

669"), commenced an action to enforce the terms of a collective bargaining agreement with defendant Grinnell Corporation d/b/a/ Grinnell Fire Protection ("Grinnell"), sued here as "Simplex Grinnell LP," pursuant to the Labor Management Relations Act, 29 U.S.C. § 185(a). For purposes of this case, Local 669 represents a bargaining unit of employees in Erie and Niagara counties ("the Buffalo area bargaining unit").

Local 669 and National Fire Sprinkler Association ("NFSA"), a multi employer national trade association of business organizations engaged in the fire protection industry, entered into a collective bargaining agreement in 2001 ("2001 agreement"). By agreement, the separate employers who elect to join NFSA authorize NFSA to represent the group of employers for collective bargaining purposes with the relevant unions. Local 669 alleges that Grinnell was a member of NFSA at the time negotiations began on the 2001 agreement, and therefore Grinnell is bound to its terms pursuant to the doctrine first announced by the National Labor Relations Board ("NLRB") in *Retail Associates, Inc.*, 120 N.L.R.B. 388, 395, 1958 WL 13328 (1958).

Local 669 now moves for summary judgment seeking an order from the Court compelling Grinnell to arbitrate a grievance filed by the union with Grinnell in October 2001. Grinnell has defended the action and the pending motion claiming it has no obligation to arbitrate since it is not bound by the terms of the 2001 agreement. The controlling issue between the parties is whether Grinnell is bound by the 2001 agreement entered into by NFSA and Local 669.

There are several matters that are not in dispute. Grinnell does not dispute that if it is bound by the 2001 agreement then it must arbitrate the grievance filed by the union. In addition, Grinnell does not dis-

pute the holding of *Retail Associates*, and its progeny, which require affirmative action by the employer to withdraw from its previous commitment that NFSA bargain on its behalf. Rather, Grinnell argues that summary judgment is not appropriate because issues of fact exist regarding whether it timely withdrew from NFSA prior to the start of negotiations with Local 669 in 2001 and whether the meetings between NFSA and Local 669 prior to May 10, 2001 constituted "negotiations." For the foregoing reasons, I find that no issues of fact exist to warrant a trial. Local 669's motion for summary judgment is granted.

### *Withdrawal From Multiemployer Bargaining Arrangement*

In *Retail Associates*, 120 N.L.R.B. at 395, the NLRB set forth what is necessary for an employer to withdraw from and to terminate a multiemployer bargaining arrangement. The NLRB established strict requirements concerning notification and declined to permit withdrawal once "negotiations" had begun.

> We would … refuse to permit the withdrawal of an employer or a union from a duly established multiemployer bargaining unit, except upon adequate written notice given prior to the date set by the contract for modification or to the agreed-upon date to begin the multiemployer negotiations. Where actual bargaining negotiations based on the existing multiemployer unit have begun, we would not permit, except on mutual consent, an abandonment of the unit upon which each side has committed itself to the other, absent unusual circumstances.

*see also, Charles D. Bonanno Linen Serv., Inc. v. N.L.R.B.*, 454 U.S. 404, 410–11, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982); *N.L.R.B. v. Indep. Ass'n of Steel Fabricators*, 582 F.2d 135, 145–46 (2d Cir.1978); *N.L.R.B. v. John J. Corbett Press, Inc.*, 401 F.2d 673

(2d Cir.1968); *N.L.R.B. v. Sheridan Creations,* 357 F.2d 245, 248 (2d Cir.1966). The required notification must be provided to the union. Notification only to the entity given authority to bargain on behalf of the group is not effective.

Here, there is no dispute that Grinnell was a member of NFSA when NFSA negotiated a 1998 agreement with the Buffalo area bargaining unit.[1] The 1998 agreement was set to expire in May 2001. Grinnell concedes that it was required to take some affirmative action to withdraw from NFSA and notify Local 669 of its withdrawal before negotiations on a new 2001 agreement began, or it would be bound to that agreement.

However, Grinnell claims that it notified Local 669 orally on April 25, 2001 that it wanted to bargain independently with Local 669 for the 2001 agreement. According to Grinnell, this notification came during a conversation between its Human Resources Vice President, Anne Liming, and Local 669's business manager, Gerald Singleton, at a meeting between the parties in Baltimore. Dkt. # 27, Liming Aff., ¶ 4. Grinnell admits that the April 25 meeting related to national issues between the parties, not the Buffalo area bargaining unit. Nonetheless, Liming swears in an affidavit that she told Singleton at that meeting that Grinnell wanted to bargain independently of NFSA for the 2001 agreement. Singleton denies that Liming said anything about Grinnell bargaining independently of NFSA or communicated that it was withdrawing from NFSA on April 25. Dkt. # 27, Ex. B, p. 15–16.

■ Grinnell argues that, at the very least, an issue of fact exists regarding the April 25 communication such that summary judgment is not warranted. I disagree. No genuine issue of fact exists regarding whether notice on April 25 was adequate under *Retail Associates. See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lucente v. I.B.M. Corp.,* 310 F.3d 243, 254 (2d Cir.2002) ("A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"). Even drawing all reasonable inferences in favor of Grinnell, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), I find that any oral communication by Liming to Singleton was insufficient to notify Local 699 that Grinnell was withdrawing its bargaining authority from NFSA. *See Bermuda Container Line, Ltd. v. Int'l Longshoremen's Ass'n,* 192 F.3d 250 (2d Cir.1999) (no genuine issues of fact exist regarding whether employer was bound to multiemployer agreement).

■ Liming testified in an earlier deposition that, at the time she had the conversation with Singleton in April, she did not know that the 1998 agreement had been negotiated by NFSA. According to her own files, the 1998 agreement was bargained by Grinnell independently. Dkt. # 27, Ex. D., pp. 11–16. Liming did not know until months later that Grinnell needed to withdraw from NFSA. Under these circumstances, no reasonable jury could find that Liming communicated to Singleton that Grinnell was withdrawing its authority from NFSA to bargain with

---

1. Grinnell was a member of NFSA in 1998 when NFSA bargained with Local 703 (a sister union of Local 669) for the 1998 agreement. On November 30, 1998, Local 703 merged into Local 669. After the merger, Grinnell continued to be a member of NFSA

while NFSA bargained with Local 669 regarding modifications to the 1998 agreement. In fact, a Grinnell representative was on the NFSA negotiating committee that bargained with Local 669 for those modifications.

Local 669 regarding the 2001 agreement because Liming did not know that Grinnell needed to do so in order to effectively bargain independently with Local 669. Liming's recent affidavit cannot be used to create an issue of fact when it clearly contradicts her prior deposition testimony. *See, e.g., Buttry v. Gen. Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995) (" '[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.' ") *quoting Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987).

■ In addition, *Retail Associates* states that written notice, not oral notice, is required to effectively communicate withdrawal from a multiemployer bargaining unit. *Retail Associates,* 120 N.L.R.B. at 395; *see also Burgess Mining & Const. Corp.,* 239 N.L.R.B. 92, 1978 WL 8228 (1978) (referring to "timely written notice" of withdrawal). Although Grinnell has cited one case that suggest that oral notification may be sufficient under certain circumstances, such as where the union acquiesces to the employer's withdrawal, those circumstances are not present here.

■ Moreover, courts in this circuit have recognized that the adequacy of the notice given under *Retail Associates* "turns in part on its clarity. Notice must be unequivocal. If the notification causes confusion, it may defeat the effectiveness of the employer's withdrawal." *Chartier v. Parkoff,* No. 96 Civ. 0541, 1997 WL 599390, at *3 (S.D.N.Y. Sep. 26, 1997), *citing, inter alia, Trustees of Hudson Valley Dist. Council of Bricklayers v. U.W. Marx, Inc.,* 851 F.Supp. 133, 139 (S.D.N.Y. 1994); *Trustees of UIU Health & Welfare Fund v. N.Y. Flame Proofing Co., Inc.,*

828 F.2d 79, 84 (2d Cir.1987). Given what the record shows that Liming understood about the history of negotiations between Local 669 and NFSA regarding the Buffalo area bargaining unit, she cannot be said to have clearly and unequivocally communicated to Local 669 that Grinnell was withdrawing from NFSA. The fact that she wrote a letter to NFSA and Local 669 after the May 8 meeting confirms that her prior communications on April 25, whatever they might have been, were not designed to effectively withdraw from the multiemployer bargaining arrangement with NFSA.

■ Grinnell next argues that, even if the April 25 communication was ineffective to put Local 669 on notice, its May 10[2] letter to Local 669 and NFSA stating that it was withdrawing all bargaining power from NFSA for purposes of the 2001 agreement was sufficient. Local 669 argues that the May 10 letter was untimely because negotiations between the parties had already occurred on May 8. Grinnell does not dispute that NFSA and Local 669 met on May 8 in Buffalo about the 2001 agreement. However, Grinnell claims that the May 8 meeting was only preliminary and did not amount to actual "negotiations," which it claims did not begin until May 29.

I disagree that there is any genuine issue of fact that the May 8 meeting between NFSA and Local 669 amounted to collective bargaining. The parties do not disagree as to what was discussed at the May 8 meeting. Rather, they disagree as to how those discussions should be characterized. The parties' notes taken at the meeting show that they went through the 1998 agreement article by article to determine whether any changes would be made

2. There is some dispute as to the exact date the letter was sent by Grinnell or received by Local 669. According Grinnell every favor-

able inference, the Court uses the earliest of all dates, May 10, for its analysis.

in the 2001 agreement. Dkt. # 24, Atts. 15, 16. After going through a number of articles, the parties agreed that they would simply supplant an existing national agreement between the parties[3] for the new local 2001 agreement, with the exception of one surviving article from the 1998 agreement that related to an apprenticeship program. The parties agreed to work out the details of how that program would continue under a new agreement and discussed their respective proposals. Dkt. # 24, Atts. 15, 16. At the end of the meeting, the parties agreed to meet on May 29 "to sign" the 2001 agreement. The signed 2001 agreement substantially conforms to the understanding that was reached on May 8.

I find as a matter of law that these discussion amounted to "negotiation" for purposes of the rule established in *Retail Associates*. Even Grinnell's counsel admitted at oral argument that the topics of discussion at the May 8 meeting were typical of what normally occurs during bargaining negotiations. While there may not have been any adversarial bargaining, none was needed because the parties were in substantial agreement about the terms of the 2001 agreement. Therefore, Grinnell's argument that May 8 was not a negotiating session because the normal activities that occur before and during typical negotiations did not occur is unpersuasive.[4] *See Sunrise Undergarment Co., Inc. v. Undergarment & Negligee Workers' Union,* 419 F.Supp. 1282, 1284–85

(S.D.N.Y.1976) (withdrawal not effective even after only first negotiation session in which "proposals and counterproposals for the renewal of the contract were exchanged and discussed."); *N.L.R.B. v. Spun–Jee Corp.,* 385 F.2d 379, 382 (2d Cir.1967) ("once the parties meet and discuss a new contract, 'bargaining' has begun, no matter how speculative the discussion is."); *see also Carvel Co. v. N.L.R.B.,* 560 F.2d 1030, 1034–35 (1st Cir.1977) (bargaining began for purposes of the *Retail Associates* rule when multiemployer bargaining unit answered union letter related to bargaining proposals).

■ Furthermore, I find it of no significance that at the end of the May 8 meeting Singleton questioned NFSA negotiator Neil Cahill as to whether Grinnell was still a member of NFSA. Cahill acknowledged that he had not heard from Grinnell at that point and was not sure. The parties do not dispute that Grinnell did not notify NFSA until *after* the May 8 meeting that it was withdrawing its bargaining authority from NFSA. Therefore, whether NFSA understood that Grinnell was a member or not on May 8 is of no consequence. To be effective, notification must be to the union, not the bargaining agent. *See N.Y. Flame Proofing Co.,* 828 F.2d at 84.

■ Likewise, it is of no consequence that NFSA did not notify Grinnell that it had commenced negotiations with Local 669. That is irrelevant since no such noti-

---

3. Local 669 and NFSA have been parties to a series of national multiemployer collective bargaining agreements, which were separate from agreements relating to the Erie and Niagara County agreements. The most recent was effective from 2000–2005. Grinnell was not a NFSA member for purposes of that agreement.

4. For this same reason, I do not find it persuasive that certain members of the NFSA bargaining committee did not characterize

the May 8 meeting as negotiations. *See e.g.,* Dkt. # 27, Ex. E. Those members testified that *the only reason to meet on May 8 was to* discuss the apprenticeship program because the parties agreed to replace the local agreement with the terms of the national agreement. But, even discussion about one aspect of the agreement, e.g., the apprenticeship program, certainly constitutes bargaining and negotiation within the rule announced in *Retail Associates.*

fication need be given. *See LaCort*, 315 N.L.R.B. 1036, 1994 WL 715998 (1994) (no exception to the *Retail Associates* rule exists where the multiemployer association fails to inform its employer members of the start of negotiations). The burden was on Grinnell, not NFSA, to take action relative to its membership for bargaining purposes. It is obvious that there would be negotiations since the existing contract was about to expire. Under *Retail Associates*, Grinnell was a member of "an existing multiemployer bargaining unit" on May 8. Its membership in NFSA could not be terminated until Grinnell gave actual written notice to Local 669 that it was withdrawing its bargaining authority from NFSA, which did not occur here until May 10. Accordingly, Grinnell is bound to the 2001 agreement.

This decision is also supported by the recent ruling of the NLRB concerning an unfair labor practice that was filed concerning this dispute between the parties. On October 26, 2001, Grinnell filed charges against Local 669 with the NLRB alleging violations of the National Labor Relations Act, Section 8(b)(1)(b) for restraining and coercing Grinnell in the company's selection of a collective bargaining representative, and Section 8(b)(3) for Local 669's refusal to bargain with Grinnell. Dkt. # 27, Ex. H. On August 30, 2002, the NLRB Regional Director found that the unfair labor practice charges filed by Grinnell lacked merit, and it refused to issue a complaint against Local 669. Dkt. # 30, Att. 26. On January 30, 2003, the NLRB Office of the General Counsel agreed with the Regional Director's decision and denied Grinnell's appeal. Dkt. # 33. Although the Court is not bound to follow the NLRB's decision under principles of

collateral estoppel or res judicata, the Court recognizes the "great weight" it should accord the NLRB determination. *See Hanna Mining v. Marine Engineers Dist. 2*, 382 U.S. 181, 192, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965). In its decision, the NLRB found that the oral communication between Liming and Singleton was "anything but clear" particularly because Liming believed that the 1998 agreement was not negotiated through the NFSA.[5] The NLRB also characterized the May 8 discussions as "bargaining for a successor agreement."

### Duty to Arbitrate

■ Article 25 of the 2001 agreement states that "[a]ll disputes and grievances relative to the interpretation or application of" the agreement are subject to a specific grievance procedure and eventually arbitration. Dkt. # 24, Att. 23. On October 5, 2001, Local 669 filed a grievance with Grinnell because it refused to adopt and to adhere to the 2001 agreement. Local 669 also requested arbitration of its grievance. Dkt. # 24, Att. 25. Grinnell has not agreed to arbitrate this dispute. Instead, Grinnell has offered to be bound to the 2001 agreement as it applies only to· the Buffalo area bargaining unit, but only if Grinnell is substituted for NFSA as a party.

The Court need not speculate why Local 669 has not accepted Grinnell's offer. Nor must the Court address Grinnell's argument that Local 669 is attempting to arbitrate for an unlawful purpose. Those are questions best left to the arbitrator and the NLRB, if necessary. The Court's role at this juncture is limited to determining whether Grinnell is bound to the agree-

---

**5.** The NLRB states that in light of Liming's misunderstanding, "it is difficult to understand how she could express an unequivocal intention to withdraw from multiemployer bargaining when she did not know the Employer had been involved in such multiemployer bargaining."

ment and whether the agreement requires it to arbitrate that dispute. *See Truck Drivers Local No. 807, I.B.T. v. Regional Import & Export Trucking,* 944 F.2d 1037, 1042–43 (2d Cir.1991) (discussing Court's role in action to compel arbitration pursuant to 29 U.S.C. § 185). Having found that Grinnell is bound and that the agreement contains a broad arbitration clause that on its face encompasses the dispute between the parties, no further inquiry by the Court is necessary.

### Conclusion

Plaintiff's motion for summary judgment is granted. (Dkt.# 21). Defendant is ordered to submit to arbitration pursuant to the terms of the 2001 collective bargaining agreement.

IT IS SO ORDERED.