Anthony **GALLETTA** and Jo–Ann Galletta, Plaintiffs,

v.

**STRYKER CORPORATION,** Stryker Howmedica Osteonics, Howmedica Osteonics Corp. and Pfizer, Inc., Defendants.

No. 02 Civ. 4942(CM)GAY.

United States District Court, S.D. New York.

Sept. 15, 2003.

Davis Saperstein, Davis, Saperstein & Salomon, P.C., New York City, for Anthony Galletta.

Ronald G. Blum, Tristan Loanzon, Ronald G. Blum, Manatt, Phelps & Phillps,

LLP, New York City, for Stryker Corporation, Stryker Howmedica Osteonics, Howmedica Osteonics Corp., Pfizer, Inc.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT AS BARRED BY STATUTE OF LIMITATIONS

MCMAHON, District Judge.

In this diversity products liability action, plaintiff Anthony Galletta sues defendants for manufacturing and selling an allegedly defective polyethylene insert that was placed in his left knee during knee replacement surgery and subsequently deteriorated and delaminated. Defendants seek summary judgment on the ground that the claims are barred by the statute of limitations. They are correct.

On April 23, 1996, Anthony Galletta had total left knee replacement surgery. Components manufactured by defendant Stryker, including a polyethylene insert, were implanted into his knee during that surgery, which was performed by Dr. Steven Zelicof.

Plaintiff visited Dr. Zelicof for follow-up in 1997, 1998 and 1999. He was making excellent progress at his 1997 visit, but by the time he saw Dr. Zelicof on June 3, 1999, it was clear that the polyethylene implant was worn. This lawsuit was commenced on May 1, 2002—within the three year statute of limitations applicable to injury arising from implantation (CPLR § 215-c(1)) if indeed June 3, 1999 is when plaintiff discovered his injury. Defendants argue that plaintiff's own testimony says otherwise.

Plaintiff was deposed on January 20, 2003. At that time, he was asked when he began to notice symptoms of deterioration in his knee. He testified that "the knee felt a little bit loose" prior to his second annual follow-up visit, which was on April 2, 1998 (Galletta EBT at 34–35). Plaintiff described this sensation as follows:

"The looseness, I would feel it—it would, I call it, slip. Not to the point where it would pop, like I was talking about, and fall down., And just in general, even going up and down the steps, I could feel a looseness or a shifting. That's the way I described it to him." *Id.* at 38–39.

Plaintiff further testified that this looseness caused "noise" and swelling—to the point that he would have to ice the knee—as well as some temporary limitation on his ability to do his job as an auto mechanic.

Plaintiff said that Dr. Zelicof told him at that time that the plastic insert was wearing and that his recommendation about what to do would depend on how fast the part continued to wear. *Id.*

The records of Dr. Zelicof do not reflect that plaintiff told him about looseness or migration at the April 2, 1998 visit. Indeed, the doctor's notes say: "No loosening or migration is noted." Nor is there any indication that x-rays taken in 1998 show any deterioration to the implant. (The x-rays themselves were not supplied to the Court in connection with this motion). However, Dr. Zelicof's notes from the plaintiff's June 3, 1999 visit include the following: "He has experienced a couple of episodes of catching in his knee. X-rays today show wear of the medial compartment of the knee with polyethylene wear being noted. No radiolucencies are appreciated. Plan is to revise his poly insert. I discussed with him that if we find wear of the components at the time, we may need to revise his components as well. He understands and will proceed."

Plaintiff was confronted with these notes at his deposition. He was specifically asked questions about the "no loosening or

migration" note contained in the doctor's 1998 report of plaintiff's visit:

Q: The next paragraph says "no loosening or migration is noted." Do you seen that, the one sentence?

A: Okay

Q: Earlier you testified that when you went back for your two-year exam, there was slippage and clicking, is that right?

A: No. I said that there was looseness, and I had conveyed that to him. If he didn't notice it—you know, that's his note.

Galletta EBT at 77.

■ Defendant moved for summary judgment dismissing the complaint as barred by the statute of limitations. The parties agree that the statute of limitations on plaintiff's claim for injury from an implanted device is three years from the date of discovery of the injury. The limitations period for breach of warranty is four years from the date the device was delivered to the place where it was used. *Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 410, 488 N.Y.S.2d 132, 477 N.E.2d 434 (1985).

■ There is no question that the breach of warranty claim is time barred, because the polyethylene implant had to have been delivered to the hospital where the operation was performed prior to the date of the operation—April 23, 1996—and the lawsuit was not commenced until May 1, 2002. Plaintiff's third cause of action, for breach of express and implied warranties, must therefore be dismissed.

However, plaintiff insists that his other claims are not time barred, because Dr. Zelicof's notes—which plaintiff claims not to have reviewed prior to giving his deposition—clearly indicate that he must have been mistaken about when he first noticed looseness in his knee.

■ Defendants argue that plaintiff is attempting to change his testimony in contravention of settled law in this Circuit, which bars a court sitting on a motion for summary judgment from considering affidavits that contradict prior deposition testimony. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991); *Mack v. United States*, 814 F.2d 120, 124–25 (2d Cir.1987). Moreover, defendants point out that Galletta's explanation for why his story has changed is itself problematic, since regardless of what he did or did not review prior to his deposition, plaintiff was confronted with Dr. Zelicof's records at the deposition and did not change his testimony that he had experienced problems with the knee prior to April 1998—whether the doctor observed them or not. Defendants also note that Galletta's recent affidavit does not deny his having experienced symptoms as early as 1998—it simply recounts that the doctor did not diagnose those symptoms until 1999. Finally, defendants contend that the doctor's 1998 notes are not trustworthy, since plaintiff identified several errors in them—specifically the references to plaintiff's returning to work (he was already back at work well before April 1998) and resuming roller skating (plaintiff denies ever having roller skated since 1978, when he was in an accident).[1]

■ Defendants are correct that Dr. Zelicof's affidavit and notes do not directly refute plaintiff's sworn testimony that he first felt symptoms prior to his second annual follow-up on April 4, 1998. Galet-

---

1. This last observation is not a proper basis on which to grant a motion for summary judgment.

ta's affidavit says nothing about when he first noticed symptoms of deterioration in his knee, and that is the relevant date for statute of limitations purposes. The three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms, so the significant date is when plaintiff began experiencing symptoms, not when Dr. Zelicof diagnosed them. *Wetherill v. Eli Lilly & Company,* 89 N.Y.2d 506, 515, 655 N.Y.S.2d 862, 678 N.E.2d 474 (1997); *see also,* Alexander, Practice Commentary to N.Y. CPLR § 214-c at 358 (McKinney Supp.2003).

Nonetheless, because the doctor's notes for *1999* correspond rather closely to what plaintiff testified happened in *1998,* one might conclude that plaintiff had at the very least raised a genuine issue of fact about whether he was mistaken in identifying the year in which he first felt symptoms. Unfortunately for plaintiff, I cannot reach such a conclusion on this record.

It is undisputed that plaintiff's attention was called to Dr. Zelicof's notes at his deposition. After seeing them, he did not change his story that he first felt symptoms in 1998. He did not even say that he could have been mistaken, or express any doubt or hesitation about the matter. Rather, he reiterated that he had told the doctor about looseness in the joint on April 4, 1998. If the doctor did not observe what plaintiff was feeling, that was of no moment ("I had conveyed that to him. If he didn't notice it—that's *his* note.") (Emphasis added).

Only after this motion was filed did plaintiff state that he must have erred. Unfortunately for him, the only reason he assigned was failure to review the doctor's notes. But he did review the doctor's

notes. He reviewed them while he was giving testimony. Having insisted, *after reviewing the notes,* that he advised the doctor about symptoms in the first quarter of 1998, he cannot now contradict himself and take the position that he really did not feel symptoms until a year later—a position, by the way, that plaintiff has never expressly adopted.[2]

For the reasons stated by defendants, the first and second causes of action are dismissed as time-barred.

Because all three of Galletta's claims are time-barred, his wife's derivative claim for loss of consortium (Fourth Cause of Action) also fails.

The complaint is dismissed with prejudice and with costs to the defendants. The Clerk is directed to close the file.

This constitutes the decision and order of the Court.

---

2. Indeed, plaintiff has not even contended that he first felt symptoms immediately prior, or shortly prior, or a month or two prior, to whatever appointment was the one at which Dr. Zelicof diagnosed him.