**Angelo SCIOLA, Plaintiff,**

v.

**QUATTRO PIU, INC d/b/a Pomodorino, Defendant.**

**No. CV–03–2542 (TCP).**

United States District Court,
E.D. New York.

March 22, 2005.

Saul D. Zabell, Somma, Zabell & Associates, Farmingdale, NY, for Plaintiff.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56 against Plaintiff's claim of unlawful termination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–634 and the New York State Human Rights Law ("NYSHRL"), Executive Law § 296 et seq.

This Court heard oral argument on January 28, 2005. After hearing oral argument and reviewing the papers submitted by the Parties, this Court finds that genu-

ine issues of material fact exist which can only be resolved by the factfinder after a trial. Defendant's motion is therefore **DENIED.**

## Background

Plaintiff Angelo Sciola ("Sciola" or "Plaintiff") is a chef who began working for Defendant Quattro Piu in 1996 when he was 57 years old. Quattro Piu is the corporate namesake of the Pomodorino restaurant chain located throughout Nassau and Suffolk counties on Long Island. Sciola worked as head chef at a Pomodorino restaurant in the summer of 1996. Approximately one year later, Sciola was fired. Shortly thereafter, in July 1997, Sciola was re-hired by Quattro Piu and became the head chef of the Pomodorino restaurant in Hauppauge, New York.

Sciola later became the executive chef of the Pomodorino restaurant chain in 2001. As executive chef, Sciola supervised the kitchen staff of all of the Pomodorino restaurants. Sciola received an additional $200.00 per week during the time he held this position. Sciola was later removed from that position in November 2001 and returned to the Pomodorino restaurant in Hauppauge. Sciola continued to work there as head chef until Quattro Piu fired him in August 2002.

Mr. Michael Russo ("Russo") is the General Manager of the Hauppauge Pomodorino restaurant. He is a minority shareholder (14%) of the Hauppauge branch and was Sciola's direct supervisor. Russo was responsible for informing Sciola that he was fired after Sciola returned from vacations to Italy and Florida. At the time, Russo was 33 years old.

Following Sciola's termination, Quattro Piu replaced him with a 38 year old male chef. (Russo Dep. at 76–77; Pl.Ex. C)

Sciola requested an investigation by the EEOC, which later determined that the evidence did not support a finding of discrimination, and issued a Notice of Right to Sue on or about March 5, 2003. (Def.'s Ex. 4)

Except for the general time line of events described above, the Parties disagree on virtually every facet of Sciola's relationship and employment history with Quattro Piu. (See Pl.'s Rule 56.1 Counter Statement *passim* ) For example, the Parties have vastly different views on how the Sciola came to work for Quattro Piu. Sciola states sometime in 1996 he was eating in one of Quattro Piu's restaurants when he learned from the manager that Mr. Piero Casalicchio ("Caslicchio"), Quattro Piu's President and majority owner, was looking to hire chefs. (Sciola Dep. at 44–45) According to Sciola, the next day Casalicchio called and invited him for an interview. (*Id.*) At the interview, Sciola prepared and cooked some food items for Casalicchio, who approved and offered Sciola a job as head chef. (Sciola Dep. at 52) Casalicchio, on the other hand, maintains that Sciola came to work for Quattro Piu after he responded to a help wanted advertisement. (Casalicchio Dep. at 9)

The preceding summary is, therefore, is a brief description of the agreed upon facts and relevant time line, avoiding the contentious, material facts which are more appropriately discussed in the Analysis section below.

## Allegations of Age Discrimination

At certain times during the last two years of his employment with Quattro Piu, Sciola alleges that Russo made the following statements to him:

"Why are you still working?"

"I would retire if I was you."

"[Sciola's girlfriend] has money, why don't you retire to Florida?"

and,

"Why don't you retire, you are sixty-three years old?"

(Sciola Dep. at 106–09; Filippi Dep. at 89)

Sciola also alleges that Russo told his customers on several occasions that Sciola was retiring. (Sciola Dep. at 111) Another Quattro Piu chef, Matteo Gambino, states that after Sciola was terminated, Casalicchio told him that Sciola had retired. (Pl.'s Ex. C) Sciola claims that he told Casalicchio that he planned to retire when he reached age 65. (Sciola Dep. at 128)

### Analysis

Summary judgment may be granted if, after resolving all ambiguities and drawing all inferences in favor of Sciola, Quattro Piu demonstrates that there are no genuine issues of material fact and that Quattro Piu is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Material facts are those which may effect the outcome of the case, and factual disputes are genuine where a reasonable jury may return a verdict for Sciola, the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Finally, in comparing the standard of proof necessary to prevail in a motion for a directed verdict and a motion for summary judgment, the Supreme Court stated, "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The ADEA protects persons who are 40 or over from discharge by virtue of that person's age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). Substantively, the law under the NYSHRL is the same as the ADEA. *See Emanuel v. Oliver, Wyman & Co., LLC*, 85 F.Supp.2d 321 (S.D.N.Y.2000).

■ The initial burden of proving a *prima facie* case of discriminatory discharge in violation of the ADEA rests with the plaintiff. *Duffy v. State Farm Mut. Auto. Ins. Co.* 927 F.Supp. 587, 593 (E.D.N.Y. 1996). In the absence of direct evidence of discrimination, a plaintiff in an ADEA employment discrimination case usually relies on the three-step *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (i) she or he is a member of a protected class; (ii) who performed his or her job satisfactorily; (iii) who suffered an adverse employment action; and (iv) under circumstances giving rise to an inference of discrimination. *Id.; Stratton v. Department for the Aging*, 132 F.3d 869, 879 (2d Cir.1997). The Court of Appeals noted in *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001), that a plaintiff's burden to establish a *prima facie* case of discrimination is *de minimis*.

After a plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Stratton*, 132 F.3d at 879; *Fisher v. Vassar College*, 114 F.3d 1332, 1335–36 (2d Cir.1997) (en banc), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). If the defendant articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). In the final step the plaintiff must provide evidence that "reasonably supports a finding of prohibited discrimination, or else the defendant will be entitled to summary judgment." *Mario v. P & C Food Mkts.*,

313 F.3d 758, 767 (2d Cir.2002)(internal quotation marks omitted). The plaintiff "must be afforded 'the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Moreover, the "ultimate issue" is whether the plaintiff has met the burden of proving that an "impermissible reason" was a motivating factor in the decision to terminate. *Lapsley v. Columbia University–College of Physicians & Surgeons*, 999 F.Supp. 506, 513 (S.D.N.Y.1998).[1] Despite the burden shifting mechanism prescribed by the *McDonnell Douglas* framework, the plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

**A. Prima facie case**

Quattro Piu concedes, for the purposes of this motion, that Sciola satisfies the first three elements necessary to establish a *prima facie* case of age discrimination. (Def.'s Mem. Sum. J. at 16) This Court finds that Sciola has also satisfied the fourth element, in that by replacing him with a 38 year old chef, Quattro Piu's actions raise an inference of age discrimination. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir.2001)(holding that rejection of plaintiff in favor of a much younger applicant, who happened to be over forty, can support an inference of age discrimination) and *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir.2000)(holding that in general replacing plaintiff with a significantly younger person suffices as evidence of age discrimination).

■ Quattro Piu admits that Sciola was replaced by a much younger employee, but also contends that Sciola cannot show an inference of discrimination because of the so-called "same actor inference" raised by the facts of this case. (Def.'s Mem. Sum. J. at 16–17) The same actor inference holds that in discrimination cases, if the same person makes both the decision to hire and fire a plaintiff-employee, the employer-defendant is entitled to a strong inference that there was no discriminatory intent on their part. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir.1997). "This is especially so when the firing has occurred only a short time after the hiring." *Id.* Generally, the shorter the length of time between the hiring and firing, the more difficult it is to find discriminatory intent. *Hueston v. City of New York*, No. 00 Civ. 9512, 2005 WL 53256, at *11, 2005 U.S. Dist. LEXIS 253, at *38 (S.D.N.Y. January 10, 2005) (noting that the Second Circuit has applied the same actor inference in cases where less than two years has passed between the hiring and firing). The same actor inference is further strengthened in cases where the person who hires and then fires the plaintiff is also a member of the same protected class as the plaintiff. *Hauptman v. Concord Fabrics, Inc.*, No. 98 Civ. 1380, 1999 WL 527970, at *6, 1999 U.S. Dist. LEXIS 11102, at *21 (S.D.N.Y. July 22, 1999).

**1.** *See also Costa v. Desert Palace*, 299 F.3d 838, 848 (9th Cir.2002) *aff'd* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), in which the court rejected application of the *McDonnell Douglas* burden-shifting framework to a jury in employee discrimination cases, and finding that at trial, a plaintiff may establish "an unlawful employment practice" by demonstrating that "a protected characteristic was a motivating factor in an employment action, even if there were other motives." (internal marks omitted)

Quattro Piu maintains that the same actor inference applies in this case on the grounds that Casalicchio, who is over forty, both hired and fired Plaintiff and is a member of the same protected class. Also, Casalicchio promoted Sciola to supervise all of the Pomodorino restaurants a year before his employment was terminated.

■ This Court refrains from applying the same actor inference to this case as it is unclear whether Casalicchio alone hired and fired Sciola during his last period of employment with Quattro Piu. In 1997, Quattro Piu's ownership met and discussed whether he should be rehired. (Casalicchio Dep. at 21–22) Sciola points out that Russo was the managing partner of the Hauppauge Pomodorino in 1997, and was one of four individuals with an ownership stake in the restaurant. (Sciola Aff. ¶ 15; Russo Dep. at 23, 26) Russo was also Sciola's direct supervisor, the person who told Sciola that he was fired, and was never a member of the same class as Sciola. Consequently, it cannot be stated with any certainty that Casalicchio alone hired and fired Sciola and thus this Court finds that Sciola meets his *de minimus* burden of presenting a *prima facie* case under the ADEA and NYSHRL.

Under the burden shifting scheme, Quattro Piu must now articulate a non-discriminatory reason why it fired Sciola. *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir.1997). If the defendant produces evidence of a non-discriminatory reason for terminating the plaintiff, "Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir.2000).

Quattro Piu cites three, non-discriminatory reasons for Sciola's termination. First, Sciola allegedly drank alcohol on numerous occasions during working hours.

(Def.'s Mem. Sum. J. at 9–10) Second, in February 2002, approximately six months before he was fired, Sciola allegedly ruined a charity event held at the Happauge restaurant. (Def.'s Mem. Sum. J. at 8–9) At the event, attendees complained that there was not enough food. (*Id.*) Sciola allegedly told the party's hostess in front of the guests that he would not provide the party with additional food. (Def.'s Ex. 3) Casalicchio testified that Sciola's actions caused a scene and that Quattro Piu was forced to provide another party for this group, free of charge. (Casalicchio Aff. ¶ 11) The third reason offered by Quattro Piu, is that upon hearing from a colleague that the food and service were poor at the Hauppauge restaurant, Casalicchio conducted a surprise visit and found that the food was wanting. (Def.'s Mem. Sum. J. at 10)

The burden of proof now shifts back to Sciola to demonstrate that Quattro Piu's proffered reasons for his termination are false. Sciola strongly denies drinking alcoholic beverages when he was working. (Sciola Dep. at 186–88) Furthermore, he states that the only time he ever imbibed alcohol at work was when Casalicchio visited the restaurant and invited Sciola to have a drink with him. (*Id.*) Sciola's behavior at the charity event as previously described was clearly inappropriate. Sciola counters that he did provide guests with an additional serving of food, however, he did not have permission from Casalicchio to give the guests a third serving. (*Id.* at 189–91) Testimony also revealed that Quattro Piu's catering manager was present during the event and, despite her title, she appears to bear no responsibility for the incident, even though Russo admits that Quattro Piu had problems providing the correct amount of food to this particular group in the past. (Russo Dep. at 58–59) Moreover, although Casalicchio testified that Sciola's role in this incident prompted his firing, Quattro Piu did not fire Sciola until six months later. (Casalic-

chio Dep. at 53) Casalicchio states that he delayed firing Sciola because he needed time to find a replacement. (*Id.*) Although this Court is not in the position to evaluate Quattro Piu's business decisions, *see, e.g., DeMarco v. Holy Cross High School,* 4 F.3d 166, 171 (2d Cir.1993) (holding that "in applying the *McDonnell Douglas* test to determine whether an employer's putative purpose is a pretext, a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable"), a half year search seems too long, particularly when Quattro Piu had no problem finding a replacement for Casalicchio when he took two vacations immediately prior to his termination. Additionally, Casalicchio's testimony is inconsistent as he stated in his affidavit that he did not start the search for a replacement until Sciola went on vacation in July 2002, approximately four months after the catering incident. (Casalicchio Aff. ¶ 17)

Finally, Casalicchio testified that his visit to the Hauppauge restaurant was prompted not only because he heard that a certain dish had no flavor but that the service was also slow. (Casalicchio Aff. ¶ 15) Slow service, it would seem, rests equally if not more with the restaurant's general manager, Russo, and not the head chef. Sciola further responds that "he never received a negative performance evaluation and Casalicchio himself testified that during both Plaintiff's first and second tenure with Defendant his performance was excellent." (Pl.'s Opp. Mem. at 13) In addition, Quattro Piu provided Sciola with a favorable (albeit lukewarm) letter of recommendation following his termination. (Pl.'s Ex. A) Together, these facts undermine Quattro Piu's contention that quality of Plaintiff's work performance led to his termination. *See DeMarco,* 4 F.3d

at 171 (2d Cir.1993) (providing that pretext inquiry takes into consideration "whether the putative non-discriminatory purpose was stated only after the allegation of discrimination").

■ Viewing all of the evidence in a light most favorable to the nonmoving party, this Court finds that a reasonable jury could find that Sciola has presented sufficient evidence placing Quattro Piu's proffered, non-discriminatory grounds for terminating his employment in doubt. In sum, Sciola concedes none of the reasons for his termination asserted by Quattro Piu. Quattro Piu's cited non-discriminatory reasons, though persuasive, are not dispositive at this juncture. Moreover, the differing accounts of Sciola's behavior and work performance "creates genuine issues of material fact that can only be decided by a factfinder after trial." *Carlton,* 202 F.3d at 137.

Plaintiff also argues that the proffered non-discriminatory reasons for his firing were not only false, but are a pretext for discrimination. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515–16, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### B. Pretext

Sciola argues that Quattro's Piu's explanation for his firing is pretextual as he was subjected to a series of age-related remarks by Russo in the two years leading up to his firing. Quattro Piu denies the allegation that Russo made the age-related remarks. Russo testified that although he did not make the exact statements attributed to him, he did discuss retirement with Sciola on several occasions. (Russo Aff. ¶ 31–32)[2] Quattro Piu argues that even if

---

**2.** Along with their reply papers, Quattro Piu attached affidavits from two Pomodorino cus-

tomers who deny ever hearing Russo make

Russo made the alleged age-related remarks, his comments were "isolated, ambiguous and susceptible to non-discriminatory interpretation." (Def.'s Mem. Sum. J. at 18) Aside from citing two cases—*Pasha v. William M. Mercer Consulting, Inc.*, 2004 WL 188077, 2004 U.S. Dist. LEXIS 1226 (S.D.N.Y.2004) and *Beers v. Nynex Material Enters. Co.*, 1992 WL 8299, 1992 U.S. Dist. LEXIS 240 (S.D.N.Y.1992)-Quattro Piu does not sufficiently flesh out why Mr. Russo's alleged remarks fall into this category.

■ Quattro Piu also contends that these alleged age-related remarks are merely stray comments which do not raise an inference of discrimination. (Def.'s Mem. Sum. J. at 19) "[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir.1998) (discussing *Woroski v. Nashua Corp.*, 31 F.3d 105, 109–110 (2d Cir. 1994)); *see also Carlton*, 202 F.3d at 136 (holding that one stray comment by itself is ordinarily insufficient proof of discrimination). When determining whether a comment is a stray remark, courts consider (i) who made the remark, whether a decision maker, supervisor or co-worker; (ii) the point in time when the remark was made in relation to the employment decision at issue; (iii) whether a reasonable person could view the remark as discriminatory; and (iv) whether the remark was related to the decision making process. *Fears v. Heritage Ctrs.*, 02cv639S, 2004 WL 1824126, at *3, 2004 U.S. Dist. LEXIS 16455, at *9–10 (W.D.N.Y. August 15, 2004).

Under certain of these factors, Russo's age-related remarks do not appear to be stray remarks. First, Russo's remarks were made at several times during the two years leading up to Sciola's termination and therefore are temporally related to the decision to fire. Also, a reasonable person could view the alleged remark, "Why don't you retire, you are sixty-three years old?" as discriminatory as the speaker's opinion is that once an arbitrary age is reached, an individual should retire. This is exactly the kind of perception the ADEA and NYSHRL are intended to deter.

An important and unresolved factual issue rears its head once again when assessing whether the other stray remark factors apply. Specifically, whether or not, and to what extent, Russo could influence Sciola's employment status with Quattro Piu. On this point, Quattro Piu insists that notwithstanding his title of General Manager and status as part owner of the Hauppauge Pomodorino restaurant, "Russo had no involvement in the decision making process concerning whether to hire, promote, demote or terminate Sciola." (Def.'s Mem. Sum. J. at 12) This assertion is inconsistent with Casalicchio's testimony in which he states that "Mr. Russo wasn't too happy of [sic] Angelo's performance, so he definitely told me that *I had to do something*." (Caslicchio Dep. at 55)(emphasis added) Also, Russo testified that after the catering incident in February 2002, he spoke to Casalicchio about "the possibility of termination based on that situation." (Russo Dep. at 55) Casalicchio also testified that when he rehired Sciola in 1997, he discussed this decision with the rest of Quattro Piu's ownership as they had concerns

the alleged age-related remarks. These affidavits were obviously obtained in order to rebut Sciola's deposition testimony that these same customers may have overheard Russo make the comments. Sciola, however, never testified that he was certain that these partic-

ular customers were present when Russo made the remarks, only that they *may* have been present. In fact, Sciola stressed that he could not commit to stating for certain which customers heard Russo's comments. (Sciola Dep. at 110)

over rehiring Sciola. If Casalicchio had absolute authority over who was employed by Quattro Piu, then why consult with the minority shareholders? More importantly, if Russo did play a role in Plaintiff's termination, the alleged age related remarks are all the more invidious and relevant to the ultimate question of whether Sciola's termination was the result of deliberate discrimination.

In a related matter, Quattro Piu argues that this Court must ignore Sciola's deposition testimony because his testimony contradicts his affidavit. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (holding that "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment"). (Def.'s Reply Mem. at 9) Sciola states in his affidavit that Russo had the authority to terminate him. During his deposition, however, Sciola testified that Russo did not have the "full power to fire me without consent of office [sic]." (Sciola Dep. at 114). Certainly the meaning of both statements differ, however, this Court views the difference in terms of degree because it is unclear from the record the level of influence Russo had on hiring decisions. The answer to this question lies at the heart of this matter, since Russo is the same individual accused of making the alleged age related remarks. This Court cannot decide whether or not Defendant's stated nondiscriminatory reasons for terminating Plaintiff are pretextual as Russo's role in the Plaintiff's termination is unknown.

## Conclusion

As it stands, three genuine issues of material fact remain in dispute: i) whether Sciola's behavior and work performance was so deficient as to warrant his termination; ii) whether Russo made the alleged age-related remarks to Plaintiff; and iii) what influence—if any—did Russo have on Plaintiff's employment with Defendant. The answers to these questions are required before the trier of fact can determine whether age and the alleged age-related remarks were a motivating factor in Plaintiff's ouster and subsequent replacement with an employee 25 years his junior. Quattro Piu's motion for summary judgment is therefore **DENIED**.

**SO ORDERED.**